[No. 41910-6-II.   Division Two.   October 23, 2012.]

EVERGREEN WASHINGTON HEALTHCARE FRONTIER, LLC, ET AL., *Appellants*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

432

*Thomas H. Grimm* (of *Ryan Swanson & Cleveland PLLC*), for appellants.

*Robert M. McKenna, Attorney General,* and *Katy A. Hatfield* and *William T. Stephens, Assistants,* for respondent.

¶1 VAN DEREN, J. — Evergreen Washington Healthcare Frontier LLC appeals the trial court's dismissal of its

claims seeking a declaratory judgment of its right to a rate adjustment and a writ of mandamus requiring the Department of Social and Health Services (Department) to adjust its Medicaid reimbursement rates for 2006 and 2007. The Department administers the cooperative federal-state Medicaid program in Washington State. *Life Care Ctrs. of Am. v. Dep't of Soc. & Health Servs.*, 162 Wn. App. 370, 373, 254 P.3d 919 (2011). As part of that program, the Department compensates Washington State nursing facilities for care they provide to residents covered by Medicaid. Various nursing care facilities, including those owned by Evergreen,[1] appeal the trial court's order dismissing their 2010 complaint for declaratory judgment and writ of mandamus for lack of jurisdiction because they failed to timely file an appeal of the 2006 and 2007 Medicaid reimbursement schedule adjustments under the Administrative Procedure Act (APA), chapter 34.05 RCW. Because Evergreen failed to exhaust administrative remedies that were adequate to address its central claim—that the Department erred in calculating Evergreen's 2006 and 2007 payment rates—we affirm.

## FACTS

I. NURSING CARE FACILITY MEDICAID PAYMENT SYSTEM

¶2 Chapter 74.46 RCW governs the state administration of the nursing facility Medicaid payment system and provides the methodology by which the Department calculates payments to specific facilities. Former RCW 74.46.010 (1998); former RCW 74.46.431 (2008). The Department bases a nursing facility's overall payment rate on a combination of seven component rates. Former RCW 74.46-.431(1). The Department bases each component rate on a previous calendar year's cost report as specified by statute. *See, e.g.*, former RCW 74.46.431(4)(a). The Department also annually adjusts the component rates "for economic trends

---

[1] Unless otherwise noted, we collectively refer to the appellants as "Evergreen."

and conditions by a factor or factors defined in the biennial appropriations act." Former RCW 74.46.431(4)(b), (5)(b), (6)(b), (7)(b). This adjustment factor is commonly known as the "vendor rate increase" (VRI). Clerk's Papers (CP) at 6 (emphasis omitted).

## II. ADMINISTRATIVE REVIEW OF FACILITY PAYMENTS

¶3 Chapter 74.46 RCW also provides the methods of administrative review applicable to nursing facility payment rates. Former RCW 74.46.780 (1998)[2] required the Department to establish an "appeals or exception procedure" allowing nursing facilities to submit additional evidence and receive "prompt administrative review" in payment disputes "with respect to such issues as the department deems appropriate." The Department's rule implementing this statute provides that a facility challenging a payment rate "shall request an administrative review conference in writing within twenty-eight calendar days after receiving notice of the department's action or determination." Former WAC 388-96-904(1) (2004).[3]

¶4 A facility dissatisfied with the administrative review conference's results can request a further adjudicative

---

[2] Former RCW 74.46.780 provided:

The department shall establish in rule, consistent with federal requirements for nursing facilities participating in the medicaid program, an appeals or exception procedure that allows individual nursing care providers an opportunity to submit additional evidence and receive prompt administrative review of payment rates with respect to such issues as the department deems appropriate.

The legislature recodified this statute in 2010 as RCW 74.46.022(11), which provides:

The department shall establish, consistent with federal requirements for nursing facilities participating in the medicaid program, an appeals or exception procedure that allows individual nursing home providers an opportunity to receive prompt administrative review of payment rates with respect to such issues as the department deems appropriate.

*See* LAWS OF 2010, 1st Spec. Sess., ch. 34, § 19.

[3] Former WAC 388-96-904(1) provided:

Contractors seeking to appeal or take exception to an action or determination of the department . . . shall request an administrative review conference in

proceeding before the Department's board of appeals (Board) within 28 days of receiving a decision from an administrative review conference. Former WAC 388-96--904(5),[4] (11). Facilities dissatisfied with the Board's decision "may file a petition for judicial review pursuant to RCW 34.05.570(3) or other applicable authority." WAC 388-96-904(13).[5,6]

---

writing within twenty-eight calendar days after receiving notice of the department's action or determination.

The current version of WAC 388-96-904(1) is substantively identical, other than specifying that a contractor "shall file a written request for an administrative review conference *with the office of rates management.*" (Emphasis added.)

[4] Former WAC 388-96-904(5) provided:

A contractor seeking further review of a determination issued pursuant to [an administrative review conference] shall apply for an adjudicative proceeding, in writing . . . within twenty-eight calendar days after receiving the department's administrative review conference determination letter. A review judge or other presiding officer employed by the department's [Board] shall conduct the adjudicative proceeding.

[5] We refer to the current version of subsection (13) because it has not changed.

[6] RCW 74.46.531(1) and (2)(b) also allow nursing facilities to request adjustment of component payment rates due to an "error[ ] or omission[ ]" in determining the rates. RCW 74.46.531(4) provides:

The department shall review a contractor's request for a rate adjustment because of an alleged error or omission, even if the time period has expired in which the contractor must appeal the rate when initially issued, pursuant to rules adopted by the department under [RCW 74.46.022(11)]. If the request is received after this time period, the department has the authority to correct the rate if it agrees an error or omission was committed. However, if the request is denied, the contractor shall not be entitled to any appeals or exception review procedure that the department may adopt under [RCW 74.46.022(11)].

Evergreen did request rate adjustments for 2006 and 2007 under RCW 74.46-.531(4) in 2009, which the Department denied. Evergreen then appealed to the Board, which denied the request based on lack of jurisdiction after making findings that Evergreen's failure to appeal the 2006 and 2007 rate adjustments within the 28-day time limits precluded the Board's jurisdiction to address the same issue. Evergreen appealed the Board's decision in its APA complaint but later dismissed it before the superior court reviewed it. Therefore, a determination of appeal rights under the APA from the Department's denial of a rate adjustment request under RCW 74.46.531(4) is not ripe. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977).

III. Department's 2006 and 2007 Component Rate Determinations

¶5 Effective July 1, 2006, the legislature's 2006 biennial appropriations act set the VRI at 1.3 percent. Laws of 2006, ch. 372, § 209(12). In a June 30, 2006, letter, the Department notified Evergreen of its payment rates effective July 1, 2006, and informed Evergreen that the rates were "subject to administrative review" under former WAC 388--96-904 within the 28-day filing period. CP at 183. The letter included rate computation worksheets with the rates' descriptions and step-by-step explanations of how the Department calculated each rate. Specifically, the letter provided:

Beginning with July 1, 2006 rates, the Direct Care and Operations component rates are rebased to the 2003 cost report and subject to a [VRI] of 1.3%. Therapy Care and Support Services component rates continue to be based on the 1999 cost report. Allowable costs in Therapy Care and Support Services were adjusted by a 2.1% VRI effective July 2001, a 1.5% VRI effective July 2002, a 3.0% VRI effective July 2003, a 2.4% VRI effective July 2004, and a 1.3% VRI effective July 2005. Effective July 1, 2006, a VRI of 1.3% is applied to Therapy Care and Support Services.

CP at 185. Regarding the four components at issue here, the letter's individual description of the direct care and operations components reiterated that they "contain[ed]" or were "adjusted" by the "1.3% VRI effective July 2006." CP at 185-87. Similarly, the letter's individual descriptions of the therapy care and support services components reiterated that they "contain[ed]" the VRIs for 2001 through 2006. CP at 186-87. Finally, the enclosed direct care and operations component rate worksheets showed the rates' adjustment by the 1.3 percent VRI. Similarly, the therapy care and

support services worksheets showed those rates' adjust-
ment by the 2001 through 2006 VRIs.[7]

¶6 Effective July 1, 2007, the legislature's 2007 biennial
appropriations act set the VRI at 3.2 percent. LAWS OF 2007,
ch. 522, § 206(2). The Department's June 29, 2007, letter
informed Evergreen of its payment rates effective July 1,
2007, and its ability to seek administrative review within
28 days under former WAC 388-96-904. An enclosure with
the letter stated that the direct care, therapy care, support
services, and operations component rates were "rebased to
the 2005 cost report and subject to a [VRI] of 3.2%." CP at
238. The letter's individual rate component descriptions
and enclosed worksheets showed the Department adjusted
each component rate using only the 3.2 percent VRI.

IV. LIFE CARE NURSING FACILITIES LITIGATION

¶7 After being notified of the July 1, 2006, payment
rates, various nursing facilities owned by Life Care Centers
of America Northwest Division requested an administrative
review conference to challenge the Department's VRI appli-
cation methodology for those rates. Specifically, they chal-
lenged the Department's method of not adjusting forward
the July 1, 2006, direct care and operations rate compo-
nents by applying the VRIs for the intervening years of
2003, 2004, and 2005. After Life Care timely, but unsuccess-
fully, appealed the administrative review conference's de-
termination to the Board, Life Care filed a timely petition
for review under chapter 34.05 RCW, the APA, in superior
court.

¶8 Before the superior court ruled on Life Care's APA
petition for judicial review of the 2006 payment rates, the
Department issued letters notifying nursing facilities of the
July 1, 2007, rates and applicable administrative review
procedures. Life Care again disputed the Department's

---

[7] In other words, the Department adjusted forward the component rates to
account for economic trends and conditions as reflected by the VRI in each
intervening year between the 1999 base year and the current fiscal year.

methodology of not adjusting forward the July 1, 2007, direct care, operations, therapy care, and support services component rates by applying the VRIs for the intervening years of 2005 and 2006. Life Care again timely sought an administrative review conference and adjudicative hearing before the Board.

¶9 The Department and Life Care agreed that any final judgment in the 2006 VRI methodology challenges would also bind the parties in the 2007 challenges. On September 5, 2008, the superior court entered an order reversing the Department's decision, remanding the matter to the Department, and instructing the Department to calculate the challenged component rates by applying the VRIs for intervening years as well as the current year's VRI.

V. Evergreen's Rate Challenges

¶10 Evergreen did not request an administrative review conference or board adjudicative hearing to challenge the 2006 rates. The non-Evergreen-owned nursing facilities did not seek administrative review or adjudication of their 2007 payment rates. In contrast, the nursing facilities Evergreen owned did request an administrative review conference regarding their 2007 payment rates. But the Evergreen facilities argued:

> The department has indexed 2005 costs for the purpose of setting rates applicable to the state fiscal year ended June 30, 2008 by the amount defined in the biennial appropriations act. The amount defined in the appropriations act is 3.2%. The purpose of indexing is to adjust historical costs to more closely reflect current costs based on changes in the cost of doing business. The cost reports ended December 3[1], 2005 are indexed through December 3[1], 2006. The start point of the index, therefore, is June 30, 2005 and covers a period of 30 months (2 1/2 years). Using a factor of 3.2% to cover these 30 months amounts to an annual index rate of less than 1.3% per year. . . . Use of the more industry specific SNF [skilled nursing facilities]-Market-Basket index would provide similar results. Once

again, the state has made representation to the federal government about adequacy of rates that are not supported by fact.

CP at 382 (third alteration in original).

¶11 The Department construed the Evergreen facilities' argument as a challenge to the legal validity of the 3.2 percent VRI established by the 2007 biennial appropriations act and concluded that Evergreen had to raise its challenge in "a court of proper jurisdiction," not through its administrative review procedures.[8] CP at 382. But the Evergreen facilities did not request an adjudicative hearing before the Board to review or to clarify their claim.

¶12 After the superior court issued its 2008 decision in favor of Life Care, Evergreen requested that the Department adjust its July 1, 2006, and July 1, 2007, payments under RCW 74.46.531 because the Department had made the same error in its VRI application methodology as it had in Life Care's rate adjustments. The Department denied these rate adjustment requests for several reasons in a December 2, 2009, letter.

¶13 First, the Department stated that it made no error in its methodology, the superior court erred in its contrary decision, and subsequent legislative enactments confirmed the superior court's error.[9] Because it considered the *Life Care* decision erroneous, the Department would not extend it to nonparty nursing facilities, such as Evergreen, that brought late challenges. Second, the Department stated that unlike Life Care, Evergreen had failed to exhaust its administrative remedies through the Department's administrative review conference and board adjudicative hearing

---

[8] WAC 388-96-901(2)(d) provides that "[c]hallenges to the legal validity of a statute or regulation" are not reviewable under former WAC 388-96-904's "administrative review" process, including administrative review conferences and Board adjudicative hearings. Former WAC 388-96-901(3) (2004) provides that such challenges must be brought "in a court of proper jurisdiction as may be provided by law."

[9] After the *Life Care* decision, the legislature specified that the Department should calculate component rates by applying only the current VRI. Former RCW 74.46.431(4)-(7); *see* Laws of 2009, ch. 570, § 1(4)-(7).

process. Finally, the Department stated, "[T]here were—and are—no funds in the relevant appropriation period to pay for an extension of the [*Life Care*] ruling to all facilities; the settlement with the named plaintiffs in the [*Life Care*] case effectively exhausted the appropriated funds for [the relevant fiscal years]." CP at 531.

¶14 Evergreen unsuccessfully appealed to the Board, seeking an adjudicative hearing. In a decision mailed July 15, 2010,[10] the Board reasoned that it had no jurisdiction to hear an appeal because RCW 74.46.531(3)'s plain language barred further administrative review of the Department's denial of a rate adjustment. The Board also reasoned that the Department's 2006 and 2007 letters sufficiently notified Evergreen of its methodology in applying the VRI and of its administrative remedies and, thus, Evergreen had failed to exhaust its administrative remedies by not pursuing administrative review of its challenges to the 2006 and 2007 rates.

¶15 Evergreen responded by filing two separate actions in superior court: (1) a complaint seeking a "monetary judgment," a declaratory judgment of its rights, and a writ of mandamus compelling the Department to recalculate the 2006 and 2007 reimbursement rates and (2) an APA petition for judicial review of the Board's order.[11] CP at 40. Both actions asked that the trial court order the Department to recalculate Evergreen's July 1, 2006, and July 1, 2007, payment rates.

¶16 The Department successfully moved under CR 12(b)(1) to dismiss Evergreen's complaint for declaratory judgment and a writ of mandamus for lack of jurisdiction. The trial court concluded that (1) Evergreen failed to

---

[10] The parties do not provide citation to this decision, and our examination of the record does not indicate when Evergreen received it.

[11] Both of these citations refer to the amended complaint and amended APA petition for review, filed respectively on December 16 and 17, 2010. The original complaint was filed on August 12, 2010. The record does not indicate when the original APA petition was filed.

exercise a "plain, speedy, [and] adequate remedy" by failing to pursue administrative review within 28 days of receiving notice of its July 1, 2006, and July 1, 2007, rates; (2) the trial court had no authority under chapter 7.16 RCW or chapter 7.24 RCW to issue a declaratory judgment or writ of mandamus; and (3) the trial court lacked subject matter jurisdiction over the case. CP at 597. Subsequently, Evergreen voluntarily dismissed its APA petition asking for review of the Board's order. Evergreen appeals the trial court's dismissal of its claims seeking a declaratory judgment of its rights to a rate adjustment and a writ of mandamus requiring the Department to adjust its rates for 2006 and 2007.

## ANALYSIS

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

¶17 Evergreen now argues that the trial court erred in dismissing its complaint because (1) Evergreen exhausted its administrative remedies available in 2009 by seeking rate adjustments under RCW 74.46.531; (2) the Department's letters notifying Evergreen of its July 1, 2006, and July 1, 2007, payment rates were not " 'final' " agency orders or actions requiring Evergreen to seek administrative remedies within 28 days; (3) the Department's failure to provide sufficient notice in its 2006 and 2007 letters of its VRI application methodology excused Evergreen from the requirement that it exhaust administrative remedies available in those years; and (4) Evergreen's constitutional claims asserted in 2009 excused it from earlier exhausting its administrative remedies. Br. of Appellant at 25. The Department responds that the trial court lacked jurisdiction over Evergreen's claims because Evergreen failed to exhaust adequate administrative remedies in 2006 and 2007. We agree with the Department.

I. Standard of Review

██ ¶18 We review de novo a motion to dismiss under CR 12(b)(1).[12] *Todric Corp. v. Dep't of Revenue*, 109 Wn. App. 785, 788 n.2, 37 P.3d 1238 (2002). This case also involves issues of statutory interpretation, which we review de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

██ ¶19 Our fundamental objective in statutory interpretation is to give effect to the legislature's intent. *Campbell & Gwinn*, 146 Wn.2d at 9. If a statute's meaning is plain on its face, we give effect to that plain meaning as an expression of legislative intent. *State ex rel. Citizens Against Tolls (CAT) v. Murphy*, 151 Wn.2d 226, 242, 88 P.3d 375 (2004). We discern plain meaning not only from the provision in question but also from closely related statutes and the underlying legislative purposes. *Murphy*, 151 Wn.2d at 242. If a statute is susceptible to more than one reasonable interpretation after this inquiry, then the statute is ambiguous and we may resort to additional canons of statutory construction or legislative history. *Campbell & Gwinn*, 146 Wn.2d at 12.

¶20 We give effect to all statutory language, considering statutory provisions in relation to each other and harmonizing them to ensure proper construction. *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 560, 14 P.3d 133 (2000). We avoid construing a statute in a manner that results in "unlikely, absurd, or strained consequences." *Glaubach v. Regence BlueShield*, 149 Wn.2d 827, 833, 74 P.3d 115 (2003).

---

[12] Evergreen argues that we should review this case under a summary judgment standard of review. The Department did ask the trial court to treat its motion to dismiss as a CR 12(b)(1) motion or, in the alternative, as a summary judgment motion. But the trial court granted the motion to dismiss based on lack of subject matter jurisdiction, a proper subject of a CR 12(b)(1) motion; and its order contained no reference to summary judgment. Thus, we review the motion under a CR 12(b)(1) standard.

¶21 We give substantial weight to an agency's interpretation of the law within its expertise, such as regulations the agency administers. *Silverstreak, Inc. v. Dep't of Labor & Indus.*, 159 Wn.2d 868, 885, 154 P.3d 891 (2007); *Dep't of Labor & Indus. v. Granger*, 159 Wn.2d 752, 764, 153 P.3d 839 (2007). But an agency's interpretation does not bind us, and "deference to an agency is inappropriate where the agency's interpretation conflicts with a statutory mandate." *Granger*, 159 Wn.2d at 764. " '[R]ules that are inconsistent with the statutes they implement are invalid.' " *Granger*, 159 Wn.2d at 764 (alteration in original) (quoting *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 715, 153 P.3d 846 (2007)). Finally, whether exhaustion is required is also a question of law, which, again, we review de novo. *Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 19 n.10, 829 P.2d 765 (1992).

II. JUDICIAL REVIEW OF NURSING FACILITY PAYMENT RATE DETERMINATIONS

¶22 Evergreen argues that it was not required to pursue its remedies under former WAC 388-96-904 in 2006 and 2007 before seeking judicial review of the Department's 2009 and 2010 denials of its rate adjustment request. It argues that because RCW 74.46.531 allows nursing facilities to seek adjustment of their payment rates after expiration of the 28-day time limitations under former WAC 388-96-904(1) and former WAC 388-96-904(5), and because it precludes further administrative review of the Department's denial of an adjustment, it need not comply with the time limits for seeking redress under the APA. The Department argues that the exhaustion doctrine bars Evergreen's current claims because its administrative remedies in 2006 and 2007 would have resolved Evergreen's central claim, i.e., that the Department used an erroneous methodology in applying the VRI in those years.

### A. APA Governs Review of Agency Actions

¶23 RCW 34.05.510 provides, "This chapter establishes the exclusive means of judicial review of agency action." RCW 34.05.010(3) provides, " 'Agency action' means licensing, the implementation or enforcement of a statute, the adoption or application of an agency rule or order, the imposition of sanctions, or the granting or withholding of benefits."

¶24 RCW 34.05.570(4)(a) provides for judicial review of agency actions other than agency rule making or agency orders entered in adjudicative proceedings. Here, the Department's 2006 and 2007 payment rate determinations, which were not the result of agency rule making or adjudicative procedures, were an implementation of the Department's duties under former RCW 74.46.431(1) to establish payment rates for participating nursing facilities. Accordingly, the rate determinations were "other" agency action subject to the APA's requirements.

### B. Exhaustion Requirement

¶25 Generally, a party must exhaust all available administrative remedies before seeking relief in superior court. *Citizens for Mount Vernon v. City of Mount Vernon*, 133 Wn.2d 861, 866, 947 P.2d 1208 (1997). The APA specifically requires exhaustion of administrative remedies before a party may petition for judicial review under its provisions. RCW 34.05.534. Administrative remedies must be exhausted "when the 'relief sought . . . can be obtained by resort to an exclusive *or adequate* administrative remedy.' " *Citizens for Mount Vernon*, 133 Wn.2d at 866 (emphasis added) (alteration in original) (quoting *S. Hollywood Hills Citizens Ass'n for Pres. of Neighborhood Safety & Env't v. King County*, 101 Wn.2d 68, 73, 677 P.2d 114 (1984)). "Although a remedy is not the precise relief sought, or will not give the litigant 'complete relief,' the remedy may be adequate for purposes of requiring exhaustion." *Smoke v.*

*City of Seattle*, 132 Wn.2d 214, 225, 937 P.2d 186 (1997) (quoting *Dioxin/Organochlorine Ctr. v. Dep't of Ecology*, 119 Wn.2d 761, 777, 837 P.2d 1007 (1992)).

¶26 Here, as required by former RCW 74.46.780, the Department established an administrative review process, including administrative review conferences and adjudicative hearings before the Board. Former WAC 388-96-904(1), (5). Former WAC 388-96-901(1)(a)(i) (2004) specifically authorized review under "the administrative review process prescribed in [former] WAC 388-96-904" of challenges to "the way in which the department applied a statute or department rule to the contractor's circumstances," including the Department's "[determinations of] a nursing facility payment rate."

¶27 Although Evergreen eventually sought a declaratory judgment and a writ of mandamus directing the Department to adjust its reimbursement rates for 2006 and 2007, it could have pursued its ultimate desired result—a favorable determination requiring the Department to recalculate its payment rates using Evergreen's VRI application methodology—through the Department's administrative review process. Accordingly, these administrative remedies were adequate to address the essence of Evergreen's claims, i.e., that the Department used an erroneous VRI application methodology in calculating its payment rates. Thus, Evergreen failed to exhaust these remedies when it failed to request an administrative review conference on the VRI methodology issue within 28 days of receiving notice of its July 1, 2006, and July 1, 2007,[13] payment rates.

---

[13] We agree with the Department and the Board's determination that Evergreen requested an administrative review conference in 2007 concerning the legal validity of the legislature's statutorily established 3.2 percent VRI effective July 1, 2007, not the Department's methodology of applying only that VRI in calculating payment rates.

Even if Evergreen did challenge the VRI methodology in 2007, it failed to appeal the administrative review conference's determination and to seek to clarify its challenge's nature to the Board. Accordingly, Evergreen still failed to exhaust all its available administrative remedies concerning the July 1, 2007, payment rates.

¶28 Furthermore, requiring Evergreen to have exhausted its administrative remedies under former RCW 74.46.780 and former WAC 388-96-904 is consistent with other related provisions of chapter 74.46 RCW and the relationship between administrative and judicial review.[14] In explaining the relationship between administrative and judicial review, our Supreme Court has observed that requiring exhaustion is proper where a claim would be "difficult to assess [by the trial court] where the litigant had not exhausted administrative procedures," such as in the absence of an administrative record. *Citizens for Clean Air v. City of Spokane*, 114 Wn.2d 20, 31, 785 P.2d 447

---

[14] We do not analyze the availability of judicial review under the APA of rate adjustment request denials under RCW 74.46.531(4) here because Evergreen dismissed its APA complaint addressing the Department's decision under it. Nevertheless, we briefly mention Evergreen's argument because Evergreen interprets RCW 74.46.531(3) to permit judicial review of the Department's denial of a late adjustment request without having first exhausted administrative remedies under former WAC 388-96-904.

Under Evergreen's interpretation, nursing facilities would have two options for preserving judicial review of payment rate determinations: They could challenge payment rates within 28 days under former WAC 388-96-904's procedures or they could challenge payment rates *at any other time* under RCW 74.46.531(4). But this interpretation would render superfluous former WAC 388-96-904(1)'s 28-day limitation, contrary to our principles of statutory interpretation.

Moreover, any late payment rate adjustments the Department approves under RCW 74.46.531 are "subject to the provisions of RCW 74.46.421," which the Department refers to as the " 'budget dial' " statute. RCW 74.46.531(6); Br. of Resp't at 31. To ensure that average payment rates for any state fiscal year under the nursing facility payment system, weighted by patient days, comply with the legislature's directives in the biennial appropriations act, the budget dial statute provides:

If any final order or final judgment, including a final order or final judgment resulting from an adjudicative proceeding or judicial review permitted by chapter 34.05 RCW, would result in an increase to a nursing facility's payment rate for *a prior fiscal year or years*, the department shall consider whether the increased rate for that facility would result in the statewide weighted average payment rate for all facilities for such fiscal year or years to be exceeded. *If the increased rate would result in the statewide average payment rate for such year or years being exceeded, the department shall increase that nursing facility's payment rate to meet the final order or judgment only to the extent that it does not result in an increase to the statewide weighted average payment rate for all facilities.*

RCW 74.46.421(4)(c) (emphasis added). Accordingly, any retroactive relief granted a nursing facility is limited by the complex calculations involved in determining whether such relief would violate the budget dial statute's requirements.

(1990); *Estate of Friedman v. Pierce County*, 112 Wn.2d 68, 78, 768 P.2d 462 (1989). Allowing parties to seek judicial review of a payment rate determination without first using former WAC 388-96-904's administrative review process would deprive reviewing courts of an administrative record, including the Department's evidence in assessing budget dial considerations and the Board's findings of fact and conclusions of law. And requiring parties seeking judicial review to challenge payment rates within 28 days increases the likelihood that a reviewing court and the Department could provide effective relief, i.e., order a rate recalculation before it expended all appropriated funds for the applicable year.

## C. Final Agency Action

¶29 Evergreen also argues that it was not required to exhaust its administrative remedies in 2006 and 2007 because the Department's rate determination letters did not constitute final agency actions. We also disagree with this assertion.

¶30 The requirement to exhaust administrative remedies arises only after final agency order or action. *Smoke*, 132 Wn.2d at 222. "An agency action is 'final' when it 'imposes an obligation, denies a right, or fixes a legal relationship as a consummation of the administrative process.' " *Wells Fargo Bank, NA v. Dep't of Revenue*, 166 Wn. App. 342, 356, 271 P.3d 268 (internal quotation marks omitted) (quoting *Bock v. State Bd. of Pilotage Comm'rs*, 91 Wn.2d 94, 99, 586 P.2d 1173 (1978)), *review denied*, 175 Wn.2d 1009, 285 P.3d 885 (2012).

¶31 The 2006 and 2007 letters explained and completed the Department's administrative process of calculating rate payments by fixing the Department's payment obligations to Evergreen. Furthermore, the letters indicated their finality by expressly informing Evergreen that the rate determinations were administratively appealable

within 28 days.[15] Accordingly, the letters constituted final agency action.

## D. Notice of VRI Methodology

¶32 Evergreen further argues that it was not required to exhaust its administrative remedies in 2006 and 2007 because the Department's letters notifying Evergreen of its July 1, 2006, and July 1, 2007, payment rates did not provide sufficient notice of the Department's VRI application methodology. Because the letters did provide sufficient notice, this argument fails.

¶33 The Department's letter and included worksheets informing Evergreen of its July 1, 2006, rates clearly and repeatedly provided that the Department applied only the current year's VRI to the direct care and operations component rates, but that it applied the VRIs for the base year through the current year to the therapy care and support services component rates. Likewise, the Department's letter and worksheets informing Evergreen of its July 1, 2007, rates repeatedly demonstrated that the Department applied only the current year's VRI to all four component rates. They provided sufficient notice of the Department methodology Evergreen later challenged in 2009. Evergreen's claim fails.

## E. Exhaustion of Administrative Remedies and Evergreen's Constitutional Claims

¶34 Finally, Evergreen, citing *South Hollywood Hills*, 101 Wn.2d at 74, argues that its current equal protection and due process claims relieve it from any exhaustion requirements. This argument also fails.

---

[15] Evergreen specifically argues that the rate determinations were not final because they were potentially subject to adjustment under RCW 74.46.531. But under Evergreen's rationale, no agency action would be final if it was potentially subject to modification on administrative or judicial review. The pertinent fact is that the letters stated the Department's final payment determinations until and unless Evergreen obtained a favorable contrary order or judgment on review. The rate determinations were final, and Evergreen's claim fails.

¶35 The *South Hollywood Hills* court generally stated, "[I]f the party is challenging the constitutionality of the agency's action or of the agency itself, the exhaustion requirement will be waived." 101 Wn.2d at 74 (citing *Ackerley Commc'ns, Inc. v. City of Seattle*, 92 Wn.2d 905, 602 P.2d 1177 (1979)). But the *Ackerley* court specifically stated:

> It is true that a party may always raise the question of the constitutionality of an administrative action *as a defense* in a judicial proceeding to enforce the administrative rule, and in such cases prior exhaustion of administrative remedies will not be required. In such cases, of course, the party has no need to show it is harmed by administrative action because it is already a defendant in enforcement proceedings. *Where a party affirmatively seeks declaratory or injunctive relief, however, it must show that its remedies have been exhausted in order to show it has standing to raise even a constitutional issue.*

92 Wn.2d at 908-09 (most emphasis added) (citations omitted). The *Ackerley* court further elaborated, " 'If . . . an administrative proceeding might leave no remnant of the constitutional question, the administrative remedy plainly should be pursued.' " 92 Wn.2d at 909 (alteration in original) (quoting *Pub. Utils. Comm'n v. United States*, 355 U.S. 534, 539-40, 78 S. Ct. 446, 2 L. Ed. 2d 470 (1958)).

¶36 Here, Evergreen affirmatively sought a declaratory judgment based on its equal protection and due process claims and, therefore, was required to exhaust its administrative remedies before seeking such relief. Furthermore, Evergreen bases its constitutional claims on the Department's 2009 denial of its rate adjustment request following the 2008 superior court order requiring adjustment of Life Care's rates. But Life Care and Evergreen ultimately challenged their rates on the same basis: the Department's VRI methodology applied in 2006 and 2007.

¶37 Had Evergreen, like Life Care, timely exercised its administrative remedies, it, too, could have received a judgment in its favor. Accordingly, the factual predicate of

Evergreen's current constitutional claims—i.e, the Department's act of adjusting rates for parties who timely sought administrative and judicial review, but not for Evergreen— would never have arisen. Thus, Evergreen's exercise of its administrative remedies would have left no remnant of its current constitutional claims; thus, exhaustion of those remedies was required.

¶38 Similarly, the statutes governing the remedies Evergreen currently seeks and Washington case law support this analysis. The applicable statutes provide that a writ of mandamus, a writ of certiorari, and a declaratory judgment are not available if courts can review the challenged agency action under the APA. RCW 7.16.360 (writs of mandamus and certiorari); RCW 7.24.146 (declaratory judgments). Our Supreme Court has held that failure to pursue APA review bars claims for a writ of mandamus or a declaratory judgment:

> Appellant's loss of the remedy provided by the APA through failure to file a timely petition for review does not render that remedy inadequate, or give rise to a right to extraordinary writs [of mandamus or declaratory judgment.] [I]f APA review was available, the extraordinary writs [a]re not.

*Bock*, 91 Wn.2d at 98, 96.

¶39 Moreover, our Supreme Court has also held that constitutional writs of certiorari are unavailable "where a right to appeal exists and the failure to appeal is not excused." *Stafne v. Snohomish County*, 174 Wn.2d 24, 38-39, 271 P.3d 868 (2012). Here, the APA governed and would have provided the exclusive means of judicial review of the Department's rate determinations had Evergreen pursued its administrative remedies. Evergreen may not now circumvent the APA by seeking a declaratory judgment, writ of mandamus, or writ of certiorari. *See, e.g., Davidson Serles & Assocs. v. City of Kirkland*, 159 Wn. App. 616, 627 n.1, 246 P.3d 822 (2011) (trial court did not have jurisdiction over declaratory judgment claim where, had appellant sought

administrative review under the Growth Management Act, judicial review would have arisen through the APA). Evergreen's argument—that its constitutional claims allow it to avoid pursuit of its administrative remedies—fails.

¶40 Evergreen had sufficient notice of the Department's 2006 and 2007 VRI application methodologies and had adequate administrative remedies under former WAC 388-96-904 to challenge those methodologies. Evergreen failed to pursue those remedies. Couching its current claims in constitutional terms does not excuse its past failure to exhaust its administrative remedies. We hold that consistent with the APA, chapter 74.46 RCW, and principles of judicial review of agency action, Evergreen had to exhaust its administrative remedies under former WAC 388-96-904 before seeking judicial review of the nursing facility payment rate disputes. Because Evergreen failed to exhaust its administrative remedies, the superior court did not have jurisdiction over Evergreen's current claims, and it properly granted the Department's CR 12(b)(1) motion to dismiss.

¶41 We affirm.

WORSWICK, C.J., and HUNT, J., concur.

Review denied at 176 Wn.2d 1028 (2013).