# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FIRST NATIONAL BANK OF OMAHA, | No. 47474-3-II |
| Respondent, | |
| v. | |
| DAVID T. GILCHRIST, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — David T. Gilchrist appeals the superior court's denial of his motion to dismiss a credit card collection action brought by First National Bank of Omaha (FNBO). Gilchrist also appeals the trial court's grant of summary judgment in FNBO's favor. We hold that the superior court did not err when it denied Gilchrist's motion to dismiss nor did it err when it granted FNBO's motion for summary judgment and awarded FNBO attorney fees. We affirm.

## FACTS

### I. FNBO'S COMPLAINT AND GILCHRIST'S MOTION TO DISMISS

In February 2014, FNBO filed a complaint for moneys due. FNBO alleged that Gilchrist entered into a credit card agreement with FNBO under which Gilchrist agreed by use of the credit account to make regular monthly payments. FNBO asserted that Gilchrist used the account, now owed $4,302.44, and that the account was in default.

In early-October, Gilchrist moved to dismiss FNBO's complaint under CR 12(b)(1) for lack of subject matter jurisdiction and CR 12(b)(6) for failure to state a claim upon which relief can be granted. The superior court ruled that because Washington is a notice pleading State, FNBO was not required to produce all evidence at this stage. The superior court noted that FNBO's records custodian's affidavit stated that FNBO possessed billing records and an account number for Gilchrist, such that there was evidence of an agreement between the parties. The superior court further noted that the absence of an agreement from the pleadings was not dispositive because contracts can be formed without a written document. The superior court denied Gilchrist's motion to dismiss, holding that it had subject matter jurisdiction and that a claim for relief was established.

## II. REQUEST FOR ADMISSIONS

In November, FNBO submitted a request for admissions to Gilchrist. Gilchrist responded that he had contacted Scot Mayo, FNBO's recovery manager, and demanded that FNBO provide him with various types of written information regarding the alleged agreement and debt. Gilchrist stated that because FNBO did not provide him with this information, he was unable to admit or deny that (1) he had a credit account with FNBO, (2) the account number ended with 9716, (3) he had ever used the credit account to make purchases, (4) he had ever received billing statements for the account, (5) he had ever failed to make timely payments on the account, and (6) there was a balance due on the account. Gilchrist admitted the last four digits of his Social Security number and that he received mail at his address on 21st Avenue, Longview.

## III. SUMMARY JUDGMENT MOTION

In January 2015, FNBO moved for summary judgment. In support of its motion, FNBO offered declarations from Mayo. Mayo stated that he is a collections manager and a custodian of

records for FNBO and that he made a complete and thorough review of the account records for Gilchrist.[1] Based on his review, Mayo stated that Gilchrist and FNBO entered into an agreement in which FNBO extended credit to Gilchrist in exchange for Gilchrist's agreement to pay. Mayo stated that Gilchrist's Social Security number ends with 8455 and Gilchrist had an account with FNBO, number ending with 9716.

Mayo stated that FNBO maintained a computerized payment history for Gilchrist onto which the debits from purchases and credits arising from use of the account were posted. FNBO mailed monthly billing statements to Gilchrist, and Gilchrist did not object to these statements. Because Gilchrist failed to perform the contractual obligation of making prescribed installment payments on the account as they became due, FNBO declared the entire balance due and payable and demanded payment thereof. The amount of $4,302.44 was due, and Gilchrist failed to pay. An employee of FNBO spoke to Gilchrist, assured him that the account on his credit report was his account, and explained that FNBO provides an encrypted account number to credit bureaus to protect his account information.

Mayo also attached billing statements for each month between May 2012 and April 2013. All of the statements contain Gilchrist's name and all of the 2013 statements include his address on 21st Avenue, Longview. The 2012 statements are all addressed to a Longview P.O. Box address. Online payments were made for the months of May, July, August, September, October, and December 2012, and January 2013. The statements list where purchases were made, the exact

---

[1] The records Mayo reviewed were made in the regular course of business at FNBO, were made near the time of the events recorded, and were recorded by FNBO employees who had personal knowledge of each event.

amounts, and that all of the purchases occurred in Longview or Kelso. Each statement notes when payment was due, the interest rates, and fees charged for late payments. Each statement also lists procedures for cardholders to use in order to refute any charges made on the account. The account had a $4,000 credit limit that was exceeded as of the April 2013 statement with $4,302.44 due. None of the statements say the account was closed.

Mayo also attached an April 2013 card member agreement, but neither Mayo nor the agreement stated that the agreement reflected the specific terms of Gilchrist's account when it was opened or for any period before April 2013.

Gilchrist opposed FNBO's motion for summary judgment. He filed an affidavit, three credit reports, and correspondence between him, FNBO, and Patenaude & Felix.

In his affidavit, Gilchrist did not deny the FNBO account belonged to him or that he made the charges or payments to the account in the billing statements. Rather, Gilchrist stated that he possessed a letter in which Patenaude & Felix stated that the debt from the alleged account was assigned to them and that he demanded a full validation of the amount owed to FNBO. Gilchrist stated that his credit reports did not show this account.

FNBO's attorney, Matthew Cheung, filed a reply declaration. Cheung stated that he is an associate at Patenaude & Felix and that Patenaude & Felix had not purchased or been assigned Gilchrist's debt, but was simply representing FNBO.

In March 2015, the superior court granted summary judgment on all issues except what were the applicable terms and conditions of the agreement. With respect to that issue, the superior court stated that FNBO had not met its burden to demonstrate the April 2013 agreement terms and conditions applied to Gilchrist. The superior court addressed each of Gilchrist's remaining

arguments in its written decision.  The superior court awarded FNBO $4,302.44 and $3,600.00 in attorney fees.  Gilchrist appeals.

ANALYSIS

I. GILCHRIST'S MOTION TO DISMISS FNBO'S COMPLAINT

Gilchrist argues that the superior court erred when it denied his motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted. We disagree.

A. SUPERIOR COURT HAD SUBJECT MATTER JURISDICTION

First, Gilchrist argues that the superior court erred when it denied his motion to dismiss for lack of subject matter jurisdiction pursuant to CR 12(b)(1) because FNBO had failed to attach a copy of the credit card agreement to the complaint.  We disagree.

We review de novo a motion to dismiss under CR 12(b)(1).  *Evergreen Wash. Healthcare Frontier LLC v. Dep't of Soc. & Health Servs.*, 171 Wn. App. 431, 444, 287 P.3d 40 (2012).  The critical concept in determining whether a court has subject matter jurisdiction pursuant to CR 12(b)(1) is the "'type of controversy.'"  *Dougherty v. Dep't of Labor & Indus.*, 150 Wn.2d 310, 316, 76 P.3d 1183 (2003) (quoting *Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 539, 886 P.2d 189 (1994)).  "'If the type of controversy is within the subject matter jurisdiction, then all other defects or errors go to something other than subject matter jurisdiction.'"  *Dougherty*, 150 Wn.2d at 316 (internal quotation marks omitted) (quoting *Marley*, 125 Wn.2d at 539).  The trial court has original jurisdiction in cases in which "the demand or the value of the property in controversy amounts to three hundred dollars."  RCW 2.08.010.

In February 2014, FNBO filed a complaint for moneys due. FNBO alleged that Gilchrist entered into a credit agreement with FNBO that Gilchrist agreed to by use of the credit account to make regular monthly payments. FNBO asserted that Gilchrist used the account, that he now owed $4,302.44, and that the account was in default.

The superior court had subject matter jurisdiction over this type of case: a civil dispute with over $300 in controversy. RCW 2.08.010. Thus, Gilchrist fails to show that the superior court lacked subject matter jurisdiction. *Dougherty*, 150 Wn.2d at 316.

### B. FNBO STATED A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Next, Gilchrist argues that the superior court erred when it denied his motion to dismiss for FNBO's failure to state a claim upon which relief could be granted pursuant to CR 12(b)(6). Again, we disagree.

We review de novo a trial court's ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under CR 12(b)(6). *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994). Dismissal is warranted only if the court concludes beyond a reasonable doubt that the plaintiff cannot prove any set of facts that would justify recovery. *Rodriguez v. Loudeye Corp.*, 144 Wn. App. 709, 717, 189 P.3d 168 (2008).

Such motions to dismiss should only be granted "'in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.'" *Tenore v. AT & T Wireless Servs.*, 136 Wn.2d 322, 330, 962 P.2d 104 (1998) (quoting *Hoffer v. State*, 110 Wn.2d 415, 420, 755 P.2d 781 (1988), *aff'd*, 113 Wn.2d 148, 776 P.2d 963 (1989)). The court's inquiry is normally confined to the factual allegations contained in the

complaint and these allegations are presumed to be true. *AT & T Wireless Servs.*, 136 Wn.2d at 330.

Typically, credit agreements are not enforceable against a creditor unless the agreement is in writing and is signed by the creditor. RCW 19.36.110. But RCW 19.36.110 does not apply to a promise, agreement, undertaking, document, or commitment relating to a credit card. RCW 19.36.120. Thus, a credit card agreement does not have to be in writing or signed by the creditor in order to be enforceable against the creditor. RCW 19.36.120.

Gilchrist appears to argue that FNBO's claim necessitated further evidence including a copy of the consumer credit agreement. But the superior court's inquiry when considering a CR 12(b)(6) motion is confined to the factual allegations in the complaint. *AT & T Wireless Servs.*, 136 Wn.2d at 330.

Here, FNBO alleged that Gilchrist entered into a credit agreement with FNBO, Gilchrist agreed by use of the credit account to make regular monthly payments, Gilchrist owed $4,302.44, and the account was in default. This set of facts, if proved true, would justify recovery. *Loudeye Corp.*, 144 Wn. App. at 717. FNBO's failure to attach to the complaint a written credit card account agreement does not mean FNBO failed to state a claim upon which relief could be granted because no written agreement is required. RCW 19.36.120. Gilchrist has not shown some insuperable bar to relief. *AT & T Wireless Servs.*, 136 Wn.2d at 330. The superior court properly denied Gilchrist's motion to dismiss for failure to state a claim.

II. SUMMARY JUDGMENT

Gilchrist argues that the superior court erred when it granted summary judgment in FNBO's favor because he raised genuine issues of material fact. Gilchrist's argument fails.

A. STANDARD OF REVIEW AND RULES OF LAW

We review summary judgment orders de novo. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c). An appellate court considers all facts and reasonable inferences from them in the light most favorable to the nonmoving party. *City of Lakewood v. Pierce County*, 144 Wn.2d 118, 125, 30 P.3d 446 (2001). But "where reasonable minds could reach but one conclusion from the admissible facts in evidence, summary judgment is appropriate." *Hiatt v. Walker Chevrolet Co.*, 120 Wn.2d 57, 65-66, 837 P.2d 618 (1992).

"Once the moving party meets its burden of showing there is no genuine issue of material fact, the nonmoving party must set forth specific facts rebutting the moving party's contentions." *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 169, 273 P.3d 965 (2012). The party opposing summary judgment may not rest on mere allegations or denials of a pleading, but must produce a response by affidavits or otherwise setting forth specific facts showing that there is a genuine issue for trial. CR 56(e). The party opposing summary judgment also may not rely on "[m]ere allegations, argumentative assertions, conclusory statements, and speculation" to demonstrate the existence of a genuine issue of material fact. *Greenhalgh v. Dep't of Corr.*, 160 Wn. App. 706, 714, 248 P.3d 150 (2011).

## B. FNBO Shows No Genuine Dispute of Material Fact

As the moving party, FNBO met its burden to show the absence of a genuine issue of material fact. FNBO supported its motion with Mayo's declarations and billing statements from Gilchrist's account. Mayo was FNBO's collections manager and a records custodian. Mayo made a thorough review of Gilchrist's account records with FNBO. Mayo stated that Gilchrist and FNBO entered into an agreement whereby FNBO would extend credit to Gilchrist and Gilchrist would make payments on the account. Mayo stated that account number 9716 is Gilchrist's account and that the account lists Gilchrist's admitted Social Security number ending in 8455.

Mayo stated that FNBO maintained a computerized payment history for Gilchrist that showed the debits from purchases and credits from use of the account. In 2013, FNBO mailed monthly account statements to Gilchrist at the mailing address Gilchrist admitted belonged to him, and Gilchrist did not object to these statements. The amount of $4,302.44, an amount above the stated credit limit, was due and Gilchrist failed to pay it. Thus, Gilchrist failed to perform the contractual obligation of making prescribed installment payments on the account as they became due, and FNBO declared the entire balance due and payable and demanded payment thereof. FNBO's system notes also state that an employee of FNBO spoke to Gilchrist and assured him that the account listed in his credit reports was his account with FNBO.

Mayo also attached billing statements for an account bearing Gilchrist's name for each month between May 2012 and April 2013. The statements list where purchases were made, the exact amounts, and that all of the purchases occurred in the Longview-Kelso area where Gilchrist lives. Each statement noted when payment is due, the interest rates, and fees charged for late payments. Mayo established that Gilchrist allowed the account to enter default and never refuted

any of the charges or reported the card lost or stolen. Thus, FNBO established that there was no genuine issue as to any material fact as to whether the account belonged to Gilchrist, that he was notified of the amounts due, the interest rates and fees charged, that he used the account to make purchases, that he failed to pay, and that the balance due was $4,302.44. Thus, we conclude that FNBO met its initial burden to show the absence of any material fact under CR 56(c).

### C. GILCHRIST'S REBUTTAL

Gilchrist argues that the superior court erred because the evidence was insufficient to determine on summary judgment that Gilchrist owed the argued amount to FNBO. We disagree.

### 1. ABSENCE OF ASSENT

First, Gilchrist relies on *Discover Bank v. Bridges* for the proposition that in order for FNBO to establish a claim, it had to show that Gilchrist assented to a contract by accepting a written card member agreement, which FNBO failed to do. 154 Wn. App. 722, 226 P.3d 191 (2010). Gilchrist argues that proof of his assent to a written agreement is necessary evidence to show default on the account and subsequent acceleration rendering the principal amount due. FNBO argues that assent of an account does not require proof of a signed agreement and that it presented sufficient other proof of Gilchrist's assent. We agree with FNBO that the superior court was not required to find Gilchrist assented to a written agreement nor was assent to a written agreement a material fact.

"A valid contract requires an objective manifestation of mutual assent to its terms, which generally takes the form of offer and acceptance." *Am. Express Centurion Bank v. Stratman*, 172 Wn. App. 667, 673, 292 P.3d 128 (2012). Acceptance of an offer may be made through conduct, and the use of a credit card if sufficiently detailed and itemized constitutes acceptance of terms

clearly stated in a card member agreement. *Stratman*, 172 Wn. App. at 673. Assent to a contract for card services can be established with "a signed agreement, online payment records, detailed and itemized proof of the defendant's card usage, *or* other evidence of the defendant's personal acknowledgement of the account." *Citibank S. Dakota N.A. v. Ryan*, 160 Wn. App. 286, 294, 247 P.3d 778 (2011) (emphasis added) (citing *Bridges*, 154 Wn. App. at 727-28).

*Bridges* does not stand for the proposition advanced by Gilchrist. In *Bridges*, this court reversed summary judgment against the Bridges based on the fact that Discover Bank's evidence failed to show that the Bridges mutually assented to a contract by accepting the card member agreement and personally acknowledging their account. 154 Wn. App. at 727. But the *Bridges* court did not reverse based *only* on Discover Bank's failure to show a signed agreement. This court also stated that Discover Bank's pleadings also did not show itemized, detailed proof of the Bridges' card usage. *Bridges*, 154 Wn. App. at 727. And the court noted that there was no evidence that the "Bridges acknowledged the debt, for example, through evidence of cancelled checks or online payment documentation." *Bridges*, 154 Wn. App. at 727. Discover Bank presented only a "generic summary of the purported account balance and payments made on it." *Bridges*, 154 Wn. App. at 728.

Unlike the creditor in *Bridges*, FNBO presented sufficient detail to show that Gilchrist assented to a credit agreement with FNBO. The statements show online payments for the months of May, July, August, September, October, and December 2012, and January 2013. The statements list where purchases were made, the amounts, and that all of the purchases occurred in the Longview-Kelso area where Gilchrist lives. Each statement notes when payment was due, the

interest rates, and fees charged for late payments. Gilchrist admitted to receiving mail at the address where Mayo stated FNBO sent these monthly billing statements in 2013.

In opposition to summary judgment, Gilchrist did not deny that the FNBO account belongs to him or that he made the charges or payments to the account in the billing statements.

Thus, we conclude that Gilchrist's argument that a genuine issue regarding his assent to use the credit account fails.

2.      DISPUTE OF BALANCE DUE AND PURCHASES MADE

Gilchrist also argues that he disputed whether he had an account with FNBO and disputed the purchases on the billing statements presented by FNBO. This argument fails.

In opposition to summary judgment, Gilchrist did not deny that the FNBO account ending in 9716 belongs to him or that he made the charges or payments to the account as listed in the billing statements. Contrary to his arguments, there is no evidence in the record that Gilchrist disputed that he had the account with FNBO or disputed specific purchases listed on the billing statements.[2]

Each billing statement sent to Gilchrist lists procedures for cardholders to use in order to refute any charges made on the account. But Mayo stated that there is no evidence that Gilchrist contacted FNBO to question any of the billing statements or to say that his card for the account was lost or stolen.

---

[2] In his reply brief, Gilchrist raises an argument that he was not required to object to the balance asserted by FNBO pursuant to the Fair Debt Collection Practices Act, 15 USC § 1692g(c). Generally, "an argument neither pleaded nor argued to the trial court cannot be raised for the first time on appeal." *Wash. Fed. Sav. v. Klein*, 177 Wn. App. 22, 29, 311 P.3d 53 (2013), *review denied*, 179 Wn.2d 1019 (2014). Gilchrist did not raise these arguments in his motion opposing summary judgment nor argue them at the summary judgment hearing. Thus, we decline to consider these arguments on appeal. *Klein*, 177 Wn. App. at 29.

In order to rebut FNBO's contentions in support of summary judgment, Gilchrist had to set forth specific facts. *Elcon*, 174 Wn.2d at 169. He did not and instead relied on allegations of assignment and speculation about why account numbers differed between his billing statements and credit reports—this is not sufficient opposition to rebut FNBO's motion for summary judgment. CR 56(e); *Greenhalgh*, 160 Wn. App. at 714. Based on the summary judgment evidence and declarations, reasonable minds could reach but one conclusion that summary judgment was appropriate. *Hiatt*, 120 Wn.2d at 65-66. FNBO established that there was no genuine issue of material fact, Gilchrist did not properly rebut this contention, and thus the superior court did not err in granting summary judgment.

## III. ATTORNEY FEES

Gilchrist's sole argument against an attorney fee award to FNBO is that FNBO is not the prevailing party because the superior court erred in granting summary judgment to FNBO. FNBO argues that trial fees were properly awarded, and FNBO also requests appellate fees. We agree with FNBO.

RCW 4.84.250 governs the award of attorney fees in damage actions of $10,000 or less and states,

> Notwithstanding any other provisions of chapter 4.84 RCW and RCW 12.20.060, in any action for damages where the amount pleaded by the prevailing party as hereinafter defined, exclusive of costs, is seven thousand five hundred dollars or less, there shall be taxed and allowed to the prevailing party as a part of the costs of the action a reasonable amount to be fixed by the court as attorneys' fees. After July 1, 1985, the maximum amount of the pleading under this section shall be ten thousand dollars.

The party seeking relief shall be deemed the prevailing party within the meaning of RCW 4.84.250 when the recovery, exclusive of costs, is as much as or more than the amount offered in settlement by the party seeking relief, as set forth in RCW 4.84.280. RCW 4.84.260. Both RCW 4.84.250 and .260 apply to contract actions. *Davy v. Moss*, 19 Wn. App. 32, 33-34, 573 P.2d 826 (1978).

Here, the trial court awarded FNBO $3,600 in attorney fees pursuant to RCW 4.84.250 and .260. Gilchrist's only attack on the attorney fee judgment awarded at the superior court level is that attorney fees should not have been granted because the superior court erred in granting summary judgment. But because we conclude that the superior court properly granted summary judgment, FNBO was the prevailing party entitled to attorney fees and costs in the superior court.

The prevailing party on appeal shall be considered the prevailing party for the purpose of applying the provisions of RCW 4.84.250. RCW 4.84.290. And if the prevailing party on appeal would be entitled to attorney fees under RCW 4.84.250, we allow to the prevailing party such additional amount as the court shall adjudge reasonable as attorney fees for the appeal. RCW 4.84.290. Under RAP 18.1(a),(b), if applicable law grants a party the right to recover attorney fees on appeal, the party must devote a section of its opening brief to the request for the fees or expenses.

FNBO complied with RAP 18.1 and devoted a section of its response brief to the request for attorney fees and costs on appeal. Thus, as the prevailing party below and on appeal, FNBO is entitled to attorney fees and costs on appeal. RCW 4.84.290.

No. 47474-3-II

We affirm the superior court's grant of summary judgment in favor of FNBO.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

BJORGEN, C.J.

MAXA, J.