[No. 47407–9. En Banc. March 26, 1981.]

CLARK COUNTY SHERIFF, *Respondent,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *Robert E. Mack* and *William C. Collins, Assistants,* for appellant.

*James E. Carty, Prosecuting Attorney,* and *Richard S. Lowry, Deputy,* for respondent.

*Norm Maleng* and *Robert I. Stier,* on behalf of Washington Association of Prosecuting Attorneys, amici curiae.

ROSELLINI, J.—The Sheriff of Clark County brought this mandamus action to compel the Department of Social and Health Services to accept all convicted felons offered by the Sheriff for transfer to the reception center at Shelton.

In an affidavit resisting the order, the director of the adult corrections division declared that because of severe overcrowding at the reception center, the Department was unable to comply with RCW 72.13.090, which states that each prisoner at the reception unit shall be provided with a single cell. He further declared that to house newcomers in the halls of the institution created serious security problems and that the rate at which convicted persons were moving through the institution made it impossible to give to each case the attention necessary if proper assignment was to be effected.

The alleged reasons for the overcrowding included overcrowding at other institutions to which persons at the reception center would eventually be moved, and the

increasing number of commitments from the superior courts and from the Board of Prison Terms and Paroles, following parole revocation. In addition, the Department was under a federal court order to reduce the population at the penitentiary, and the director felt that a comparable reduction at the Monroe Reformatory would also be necessary. It was the policy of the Department, the affidavit said, to pick up convicted persons in county jails as quickly as available space would allow, giving consideration to the conditions existing at the various county jails.

The responding affidavit of the Clark County Sheriff tended to show that severe overcrowding also existed at the county jail, that the jail did not meet the minimum standards subscribed by the Washington State Jail Commission, and that the Department repeatedly accepted considerably fewer than half of the persons qualified and available for transfer.

It is the position of the director that under the applicable statutes, he has the discretionary power to delay acceptance of convicted felons for what, in his judgment, are reasonable periods of time. The Sheriff maintains that it is the duty of the director to accept such persons when they are offered.

There is little ambiguity in the statutes upon the subject. RCW 10.70.020 provides that a certified transcript of the conviction and sentence shall be sufficient authority for the Sheriff to execute the sentence.

RCW 72.13.150 provides:

> The superintendent of the correctional institution established by this chapter shall receive all male persons convicted of a felony by the superior court and committed by the superior court to the reception center for classification and placement in such facility as the secretary shall designate, and all persons transferred thereto by the secretary from the state reformatory and state penitentiary, and other correctional facilities of the department. The superintendent shall only receive prisoners for classification and study in the institution upon presentation of certified copies of a judgment, sentence

and order of commitment of the superior court, along with other reports as may have been made in reference to each individual prisoner.

This court said in *January v. Porter,* 75 Wn.2d 768, 453 P.2d 876 (1969), that upon the entry of a final judgment and sentence of imprisonment, legal authority over the accused passes by operation of law to the Department of Institutions (now the Department of Social and Health Services) and the Board of Prison Terms and Paroles, and that those agencies of the executive branch bear full responsibility for executing the judgment and sentence or granting parole.

The statute provides that the superintendent of the correctional institution "shall receive all male persons convicted of a felony". Presumptively, the use of the word "shall" in a statute is imperative and operates to create a duty rather than to confer discretion. *State Liquor Control Bd. v. State Personnel Bd.,* 88 Wn.2d 368, 561 P.2d 195 (1977). The Department concedes that the statute is mandatory, but it argues that there is no requirement that convicted felons be accepted when they are offered to the institution. It is true that the statute does not state at what time such persons shall be accepted. Nevertheless, the fact that the Department, along with the parole board (whose responsibilities are not at issue here), has full legal authority over, and responsibility for, a person who has been convicted of a felony, makes it clear that the Department's corresponding duty to take charge of the felon arises when the conviction is entered.

There are statutory modifications of that duty. RCW 36.63.255 provides:

> Any person imprisoned in a county jail pending the appeal of his conviction of a felony and who has not obtained bail bond pending his appeal shall be transferred after thirty days but within forty days from the date judgment was entered against him to a state institution for felons designated by the director of the department of institutions: *Provided,* That when good cause is shown, a superior court judge may order the

prisoner detained in the county jail beyond said forty days for an additional period not to exceed ten days.

Under this provision, it is evident that transfer is not to be delayed beyond 40 days after conviction, even where an appeal is pending.

RCW 72.68.040 authorizes the Department to enter into agreements with local jurisdictions providing for the detention in an institution or jail operated by the local authority of prisoners convicted of a felony and sentenced to a term in a state correctional institution. This section contemplates that local jurisdictions will be obliged to house such prisoners only if they agree to do so, and implies that compensation for such housing is appropriate.

When these two sections are read together with RCW 72.13.150, it is apparent that the legislature intended all convicted male felons, other than those retained under these provisions, to be received at the Corrections Center when offered for admission.

The director suggests that discretion in this matter is conferred by RCW 72.13.080, which reads in pertinent part:

(1) Subject to the rules and regulations of the department, the superintendent shall have supervision and management of the institution, . . . subordinate officers and employees, and the prisoners committed or transferred to such institution and the custody of such persons until released as provided by law.

The Department has not adopted any rules or regulations pertaining to the reception of prisoners. The statutes relied upon do give the superintendent broad discretionary powers in the management of the institution, its personnel and inmates, but that discretion does not extend to the acceptance or rejection of convicted felons.

We are not insensitive to the problems of the Department. It carries a heavy responsibility and lacks the facilities necessary to perform all of its duties. It therefore can do only the best it can with the means at hand. However, we cannot find in the statutes any authority to pass some of

its responsibilities on to local authorities, without their agreement and without attendant compensation.

■ Citing *Bullock v. Superior Court,* 84 Wn.2d 101, 524 P.2d 385 (1974), and cases cited in that opinion, the director urges that the writ improperly compels a general course of official conduct. As those cases reveal, this principle applies where the course of conduct involves discretionary action. As explained in *State ex rel. Hawes v. Brewer,* 39 Wash. 65, 80 P. 1001 (1905), the remedy by mandamus contemplates the necessity of indicating the precise thing to be done. It is not adapted to cases calling for continuous action, varying according to circumstances, inasmuch as a command to act according to circumstances would be futile.

Here, while it is true that the order is broad enough to command future acts of the Department, the acts are precisely defined. The Secretary, or his duly authorized agent and employee, is directed to

> receive forthwith[1] at the Department's Reception and Classification Center, upon presentation of those certified documents required by RCW 72.13.150, inmates of the Clark County Jail convicted of a felony and committed to a state penal institution by the Superior Court [for] Clark County.

The acts required will not vary with changing circumstances. The writ was appropriate and the court did not err in granting it.

BRACHTENBACH, C.J., and STAFFORD, UTTER, HICKS, WILLIAMS, DORE, and DIMMICK, JJ., concur.

DOLLIVER, J. (dissenting)—The problems in penal institutions in this state brought about by overcrowding are monumental. In addition to the situation in this case, the Washington State Penitentiary is under a United States

---

[1]The counsel for the Clark County Sheriff assured the court at oral argument that his office is willing to make and has in the past made adjustments in the scheduling of transfers in emergency and other situations. We assume that this practice will continue and that the Sheriff will give the Department reasonable notice of anticipated transfers.

District Court order to reduce its population radically as of June 23, 1981 (Hoptowit v. Ray (No. 79–359, E.D. Wash.)), on appeal to the Ninth Circuit Court of Appeals, No. 80–3366), and similar relief has been asked for on behalf of prisoners at the State Reformatory at Monroe (Collins v. McNutt (No. 78–13V, W.D. Wash.)). I believe all elements of the criminal justice system, including the courts, ought to work together to find solutions to these problems. Cooperation, coordination, communication and good faith action among state and local penal authorities is essential and should be encouraged by the courts. Rather than take this approach, however, the majority has chosen to construe the applicable statutes as narrowly as possible and make it impossible for the parties to find reasonable and responsible solutions to their problems.

The statute which the majority relies upon as being decisive is RCW 72.13.150, which provides:

> The superintendent of the correctional institution established by this chapter shall receive all male persons convicted of a felony by the superior court and committed by the superior court to the reception center for classification and placement in such facility as the secretary shall designate, and all persons transferred thereto by the secretary from the state reformatory and state penitentiary, and other correctional facilities of the department. The superintendent shall only receive prisoners for classification and study in the institution upon presentation of certified copies of a judgment, sentence and order of commitment of the superior court, along with other reports as may have been made in reference to each individual prisoner.

I agree with the majority that the Department must in fact take the convicts and that if it cannot some agreements must be reached for local housing and for compensation to the local authorities. As the majority concedes, however, although the term "shall receive all male persons convicted of a felony" is mandatory, the statute does not state at what time the convicts must be accepted. Add to this the authority to manage the reception center granted to the

superintendent under RCW 72.13.080, and it seems to me that, particularly in a time of gross overcrowding in the corrections system, this court, within the statutes and its power, ought to allow state corrections officers and local officials to work toward the accommodation and resolution of their problems and not affirm inflexible mandates. I see nothing in the existing legislation which would prevent this nor do I believe it would be contrary to legislative intent.

While the majority certainly will have determined the winners and losers in this lawsuit, it will have simply abandoned any effort to require the parties to work out their differences so the welfare of all of the citizens of the State might be served.

The prospect for constructive action still exists. Statements to the court and affidavits in the record indicate the jails in some counties are both secure and uncrowded and that the backlog of prisoners in county jails from November 1979 to November 1980 ranged from 0 to 150. The record also shows that the Department of Social and Health Services has yet to adopt any rules or regulations pertaining to the regulation of prisoners. It has not attempted to negotiate intercounty/State agreements to help accelerate this critical emergency until there can be some relief in the form of new or expanded corrections facilities. There is much which can be done if the parties are allowed and required to work together without the rigid strictures of the order of the trial court.

Rather than affirm the writ, we should remand the matter to the Clark County Superior Court so that a more flexible, less draconian relief could be provided. At the very least, the implementation of the writ should be delayed for a reasonable time to see if the parties can reach a compromise. If this occurs the order would be unnecessary. I believe this approach could lead to some imaginative, constructive—and legal—provisions for relief which could be reached between the Department of Social and Health Services and Clark County and which would meet with the approval of the court. Furthermore, the Department of

Social and Health Services could then, through regulation and agreement, work out any problems with the other 38 counties rather than being bound under the harsh, inflexible and in the final analysis not very helpful mandate of the majority opinion.

I dissent.