FILED
COURT OF APPEALS
DIVISION II

2014 JUL 15 AM 10: 44

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SCOTT K. LANGE and ELIZABETH R. LANGE, husband and wife, and Trustees of the Lange Family Trust, | No. 44476-3-II |
| Appellants, | |
| v. | |
| CLALLAM COUNTY, a municipal corporation; SHEILA ROARK MILLER, DIRECTOR OF COMMUNITY DEVELOPMENT, | UNPUBLISHED OPINION |
| Respondents. | |

WORSWICK, J. — Scott and Elizabeth Lange (collectively, Lange) applied for a writ of mandamus compelling Clallam County officials to investigate their neighbor's property and determine whether its structures violated code requirements. After issuing the writ, the superior court granted the County's motion to quash the writ and dismissed Lange's action. Lange appeals, arguing that the superior court erred by (1) quashing the writ and (2) failing to award him attorney fees and costs. Because most of Lange's allegations challenged land use decisions reviewable under the Land Use Petition Act,[1] and the remaining allegation was an insufficient ground to support the writ, we affirm the superior court's decision to quash the writ.

[1] Chapter 36.70C RCW.

No. 44476-3-II

## FACTS

Lange owned property adjacent to property owned by David and Krisanne Cebelak (collectively, Cebelak). Both properties abutted the shoreline of Clallam Bay. In 1997, 2007, and 2012, Lange challenged building permits issued to Cebelak and also complained to Clallam County that structures on Cebelak's property violated code requirements.

In December 1996, the County issued a building permit to Cebelak for the construction of a single family home with an attached storage building. In May 1997, Lange protested the permit's issuance to the Clallam County Department of Community Development (hereinafter "the Department," unless otherwise specified). Lange alleged, inter alia, that the Department had issued the permits without inspecting the site and that the home was being constructed in violation of setback requirements, building codes, and the Shoreline Management Act.[2]

The Department's director replied, "The site in question has been inspected numerous times by both the Clallam County Building and Planning Division staff," and that the inspectors found that the project met all applicable code requirements. Clerk's Papers (CP) at 134. The director further asked Lange to provide any specific information he had to the contrary. Lange later averred[3] that he did not pursue his protest further because, based on the director's response, he believed that he could not prevail in a legal challenge. Cebelak's home and storage building were constructed in 1997.

In 1998, the Department granted Cebelak a permit exemption allowing him to construct a bulkhead. Because the bulkhead's value was less than $2,500, the Department concluded that

---

[2] Chapter 90.58 RCW.

[3] Lange filed a declaration in opposition to the County's motion to quash the writ.

the proposal was exempt from the substantial development permit process under former WAC 173-27-040(2)(a) (1997). In addition, the Washington Department of Fish and Wildlife issued a hydraulic project approval for Cebelak's proposed bulkhead. The bulkhead was constructed in 1998.

In December 2006, a major storm damaged the Clallam Bay shoreline and exposed Cebelak's bulkhead. Lange averred that he then became aware of the bulkhead for the first time.

After the storm, Cebelak sought, and the Department of Fish and Wildlife issued, an emergency declaration and a hydraulic project approval authorizing repairs to the bulkhead. Cebelak finished repairing the bulkhead in January 2007.

Also in 2007, Lange filed a six-point complaint with the Department, requesting that it investigate Cebelak's property. Lange claimed that (1) Cebelak failed to obtain permits to construct the storage building; (2) Cebelak misrepresented his intended use of the storage building, which Lange alleged was actually a cabin; (3) Cebelak misrepresented the value of the bulkhead in 1998 to obtain the permit exemption and further constructed the bulkhead in a location that did not comply with setback requirements; (4) Cebelak moved the bulkhead when repairing it in 2006 to a location where it further encroached on the required setback area; (5) Cebelak intentionally misrepresented his lot's size when applying for the 1996 permit to construct his home, and the County improperly granted a variance from setback requirements; and (6) Cebelak violated the terms of a permit exemption relating to construction of the home because the exemption was available for owner-occupied buildings and Cebelak rented the home after construction was complete.

Lange and the Department met to discuss his complaint, and Lange provided supporting documents. The Department's staff reviewed the documents and, accompanied by staff from the Department of Fish and Wildlife, visited Cebelak's property. The Department began to draft a written response to Lange's complaint, but it did not issue a final determination on its merits.[4]

In 2012, Lange submitted another land use complaint to the Department's director. Lange's complaint alleged that Cebelak's storage building and bulkhead each violated the Clallam County Code (CCC) and other laws. Specifically, Lange alleged that Cebelak's storage building (1) had been constructed without the issuance of required permits, (2) had been constructed in a location that violated shoreline setback requirements, and (3) violated the terms of Cebelak's permit because Cebelak rented it to others rather than living in it himself. With respect to the bulkhead, Lange further alleged that (4) Cebelak constructed the bulkhead in a location that the County's 1998 permit exemption had not approved, (5) Cebelak improperly obtained permits to repair the damaged bulkhead in 2007, and (6) Cebelak failed to obtain other permits that should have been required before repairing the bulkhead. The director declined to investigate or comment on Lange's complaint because it was the subject of pending litigation between Lange and Cebelak and because the County inspected Cebelak's property before issuing permits.

In November 2012, Lange commenced this action against the County in superior court by applying for a writ of mandamus. Lange's application sought a writ compelling the County and

---

[4] Relying on a legal opinion issued by the County's deputy prosecuting attorney, the Department concluded that it would not be a shoreline management violation to rent a home constructed pursuant to permit exemptions. After the Department informed Lange of this determination, Lange threatened to sue the County, and the parties ceased cooperating.

the Department's director "to enforce the [CCC] by investigating the code complaint [filed by Lange in 2012] and provid[ing] a final written decision within 40 days." CP at 7. Lange also requested reasonable and statutory costs including attorney's fees.

The superior court issued the writ,[5] commanding the County to (1) investigate and enforce as Lange requested or (2) show cause why it should not do so. The County moved to quash the writ, arguing that mandamus was inappropriate because, inter alia, Lange could have challenged the permitting decisions in a petition brought under the Land Use Petition Act (LUPA), chapter 36.70C RCW.

The superior court joined its show cause order and the County's motion to quash, and both parties submitted supporting declarations with attached exhibits. After the hearing, the superior court quashed the writ and dismissed the case "in light of LUPA." CP at 277.

Lange appeals.

## ANALYSIS

Lange argues that the superior court erred by dismissing this action. We disagree.

A. *Standard of Review*

A trial court's decision on a motion to quash a writ of mandamus is reviewed as a decision on a CR 12(c) motion for judgment on the pleadings. *Bock v. Bd. of Pilotage Comm'rs*, 91 Wn.2d 94, 97, 586 P.2d 1173 (1978). However, a motion for judgment on the pleadings must be treated as a motion for summary judgment when "matters outside the pleadings are presented to and not excluded by the trial court." CR 12(c); *P.E. Sys., LLC v. CPI Corp.*, 176 Wn.2d 198, 206, 289 P.3d 638 (2012). Here both parties presented, and the superior court considered,

---

[5] The superior court issued an alternative writ of mandamus under RCW 7.16.180.

5

declarations and attached exhibits outside the pleadings. Therefore we review the superior court's decision as an order granting summary judgment.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. We review an order granting summary judgment de novo, engaging in the same inquiry as the trial court. *TracFone Wireless, Inc. v. Dep't of Revenue*, 170 Wn.2d 273, 280-81, 242 P.3d 810 (2010). Thus, we consider the record and draw all reasonable inferences in the light most favorable to the nonmoving party. *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995).

B. *Writ of Mandamus*

Lange primarily argues that the superior court erred by quashing the writ of mandamus. We affirm the superior court, although in part we do so on alternative grounds.

Mandamus is an extraordinary writ that may be issued "to compel the performance of an act which the law especially enjoins as a duty resulting from an office." RCW 7.16.160; *Walker v. Munro*, 124 Wn.2d 402, 407, 879 P.2d 920 (1994). "[T]he remedy of mandamus contemplates the necessity of indicating the precise thing to be done." *Walker*, 124 Wn.2d at 407.

Here, Lange's application requested a writ compelling the County and the Department's director "to enforce the [CCC] by investigating [Lange's] code complaint . . . and provid[ing] a written final decision within 40 days." CP at 7. In turn, Lange's code complaint alleged that (1) Cebelak failed to obtain all required permits before constructing the storage building, (2) the County authorized Cebelak to construct the storage building in a location violating shoreline setback requirements, (3) Cebelak violated the terms of his building permits by renting the storage building to other people, (4) Cebelak constructed the bulkhead in a location that the

6

County's 1998 permit exemption had not approved, (5) the County improperly issued permits to Cebelak authorizing repairs to the damaged bulkhead in 2007, and (6) Cebelak failed to obtain other necessary permits before repairing the damaged bulkhead.

1. *Mandamus Is Not Available To Review Land Use Decisions*

As a threshold issue, the parties dispute whether LUPA's exclusive remedy provision, RCW 36.70C.030, barred Lange's application for the writ of mandamus. RCW 36.70C.030(1) provides that LUPA "shall be the exclusive means of judicial review of land use decisions, *except that [LUPA] does not apply to . . . (b) [j]udicial review of applications for a writ of mandamus or prohibition.*" (Emphasis added.) Thus LUPA's exclusive remedy provision did not bar Lange's application for the writ of mandamus. *Stafne v. Snohomish County*, 156 Wn. App. 667, 687, 234 P.3d 225 (2010), *review granted on other issues and aff'd*, 174 Wn.2d 24 (2012).

However, the method for obtaining the writs of certiorari, mandamus, and prohibition "does not apply to state agency action reviewable under chapter 34.05 RCW *or to land use decisions of local jurisdictions reviewable under [LUPA].*" RCW 7.16.360 (emphasis added); *see Evergreen Wash. Healthcare Frontier LLC v. Dep't of Soc. & Health Servs.*, 171 Wn. App. 431, 452, 287 P.3d 40 (2012) (considering state agency action), *review denied*, 176 Wn.2d 1028 (2013). Therefore Lange's application for the writ of mandamus had to be denied to the extent it challenged land use decisions reviewable under LUPA. *See Evergreen*, 171 Wn. App. at 452.

As mentioned above, Lange's code complaint made six allegations. Five of these allegations challenged the County's land use decisions related to either construction of the

7

storage building in 1997 or repairs to the bulkhead in 2007.[6] First, Lange's code complaint alleged that, in *issuing the building permit* for Cebelak's storage building, the County (1) incorrectly exempted the storage building from certain requirements and (2) incorrectly determined that the storage building's location complied with shoreline setback requirements. Second, Lange's code complaint further alleged that the County *erroneously permitted repairs* to Cebelak's bulkhead because (3) Cebelak failed to originally construct the bulkhead in the location that the County had approved in 1998, (4) the County improperly issued permits authorizing Cebelak to repair the damaged bulkhead in 2007, and (5) Cebelak failed to obtain other necessary permits before repairing the damaged bulkhead. Because Lange's mandamus application challenged these five land use decisions, we hold that mandamus was unavailable under RCW 7.16.360.

But Lange's code complaint also alleged that Cebelak *improperly used* his storage building as a rental property after obtaining building permits premised on his representation that he would personally use it. This allegation does not challenge a land use decision. *See* RCW

---

[6] RCW 36.70C.020(2) provides in part:
"Land use decision" means a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on:
    (a) An application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used . . . ;
    (b) An interpretative or declaratory decision regarding the application to a specific property of zoning or other ordinances or rules regulating the improvement, development, modification, maintenance, or use of real property; and
    (c) The enforcement by a local jurisdiction of ordinances regulating the improvement, development, modification, maintenance, or use of real property.
    . . . .

36.70C.020(2); *see also Samuel's Furniture, Inc. v. Dep't of Ecology*, 147 Wn.2d 440, 456, 54 P.3d 1194 (2002) (LUPA does not bar an action alleging that a person violated the conditions of a permit). Therefore we review Lange's application for a writ of mandamus requiring the County to investigate whether Cebelak's use of the storage building violated the terms of his building permit.

2. *Mandamus Is Not Appropriate Because the County Lacked a Clear Duty To Act*

To support an application for a writ of mandamus, the applicant must show (1) the official subject to the writ has a clear duty to act; (2) the applicant has no other plain, speedy, and adequate remedy in the ordinary course of law; and (3) the applicant is beneficially interested in performance of the official duty. *Eugster v. City of Spokane*, 118 Wn. App. 383, 402, 76 P.3d 741 (2003); *see* RCW 7.16.160, .170. Because we decide as a matter of law that the County had no clear duty to act, we do not reach the other elements.

Lange asserts that the County, through the Department's director, had a clear duty to act by investigating his allegation that Cebelak violated the terms of his permit and by making a final enforcement decision.[7] We disagree.

An applicant for a writ of mandamus must show that the party subject to the writ has a clear duty to act, and this duty must be ministerial rather than discretionary. *Seattle Times Co. v. Serko*, 170 Wn.2d 581, 588-89, 243 P.3d 919 (2010). The writ of mandamus will not issue to compel the performance of a discretionary act in the absence of arbitrary and capricious

---

[7] Lange claims that the County did not argue below that there was no clear duty to act on the code complaint. But Lange is mistaken. The County's motion to quash argued that any duty to investigate was merely discretionary. We note that the County's response brief does not make this argument. Regardless, we may affirm the judgment below on any ground supported by the record. RAP 2.5(a).

No. 44476-3-II

conduct.[8] *Walker*, 124 Wn.2d at 410; *State ex rel. Pac. Bridge Co. v. Wash. Toll Bridge Auth.*, 8 Wn.2d 337, 342-43, 112 P.2d 135 (1941). Prosecuting violations of the law is generally recognized as a "highly discretionary" act. *Walker*, 124 Wn.2d at 411.

Lange claims that the County had a mandatory duty to investigate the allegation in his land use complaint under provisions of the Clallam County Home Rule Charter and under chapter 20.08 CCC. We disagree.

Whether an ordinance creates a clear duty to act is a question of law reviewed de novo. *See River Park Square, LLC v. Miggins*, 143 Wn.2d 68, 76, 17 P.3d 1178 (2001). The rules of statutory interpretation apply equally to ordinances. *World Wide Video, Inc. v. City of Tukwila*, 117 Wn.2d 382, 392, 816 P.2d 18 (1991). Thus when construing an ordinance, our fundamental objective is to carry out the legislative body's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). When an ordinance has a plain meaning, we give the plain meaning effect. *Campbell & Gwinn*, 146 Wn.2d at 9. To determine the plain meaning of an ordinance, we look to all that is written in the ordinance and in related ordinances that discloses the legislative intent of the provision in question. *Campbell & Gwinn*, 146 Wn.2d at 11. Presumptively, use of the word "shall" denotes an imperative and creates a mandatory duty. *Clark County Sheriff v. Dep't of Soc. & Health Servs.*, 95 Wn.2d 445, 448, 626 P.2d 6 (1981).

---

[8] Lange appears to claim that the director's refusal to investigate his 2012 complaint was arbitrary and capricious. We disagree. Arbitrary and capricious action means action that is willful and unreasoning, taken in disregard of the facts and circumstances. *Freeman v. State*, 178 Wn.2d 387, 402, 309 P.3d 437 (2013). Here, the director declined to investigate Lange's 2012 complaint because (1) the issues it presented were already being litigated in Lange's lawsuit against Cebelak and (2) the County inspected Cebelak's property when considering his applications for permits. Because the director's refusal considered the facts and circumstances, it was not arbitrary and capricious.

10

a. *The County's Home Rule Charter*

Lange first asserts that section 4.25 of the Clallam County Home Rule Charter imposes a clear duty to enforce code violations by investigating all complaints. Lange is mistaken.

Section 4.25 provides in part:

> The Director of the Department of Community Development shall administer, enforce and advise the County Commissioners on all laws, except health, with respect to the environment, natural resources, and land and shoreline development, including, but not limited to, zoning, land divisions, environmental policy, building and fire codes, forest management, mining, agriculture, watershed planning, and floodplains.

Clallam County Home Rule Charter § 4.25.

When read together with a related section, this provision clearly vests the Department's director with powers and does not create a clear duty to act. The related section provides in part: "The executive power of the county shall be vested in the Board of Commissioners except those powers assigned to other elected officials and other elected boards and commissions by law."[9] Clallam County Home Rule Charter § 2.30.20. Thus section 4.25 vests the Department's director with power that otherwise would remain vested in the County's board of commissioners. Contrary to Lange's assertion, the plain meaning of section 4.25 does not require the director to investigate *every* alleged violation of *any* law related to the environment, natural resources, and development.

b. *CCC 20.08.060*

Lange additionally claims that CCC 20.08.060 imposes a clear duty to enforce code violations by investigating his complaint. Again we disagree.

---

[9] The director of the Department of Community Development is an elected official. Clallam County Home Rule Charter § 4.10.

11

CCC 20.08.060 states:

The Director shall determine, based on information derived from such sources as field observations, the statements of witnesses, relevant documents, and available data systems, if the following elements have been established. All elements must be established to determine that a civil code violation has occurred or is occurring.

(1) The Director shall identify the person responsible for code compliance as defined in this title.

(2) The Director shall identify the specific provision of the relevant ordinance, permit condition, notice and order, or stop work order that has been or is being violated.

(3) The Director shall determine whether there are reasonable grounds to believe that the acts or omissions that constitute the violation did occur or are occurring. Such grounds may be established either by personal observation or by reliable evidence from witnesses.

Lange asserts that CCC 20.08.060 requires the director to investigate each complaint of code violations because "the word 'shall' is repeated *at least* four times." Br. of Appellant at 19. But we look to all that is written in the ordinance and in related ordinances that discloses legislative intent. *Campbell & Gwinn*, 146 Wn.2d at 11. Read as a whole, CCC 20.08.060 requires the director to make certain determinations *if she finds a civil code violation*, but it does not require the director to investigate a complaint in the first place.

Further, Lange ignores two other provisions of chapter 20.08 CCC that disclose a legislative intent not to require the director to investigate. First, in establishing guidelines and enforcement priorities for the Department's director, CCC 20.08.050 explicitly acknowledges the existence of "times when not all potential code violations can be investigated due to lack of resources or otherwise." Thus CCC 20.08.050 implies that the director does not have a mandatory duty to investigate every complaint. Second, CCC 20.08.030(6) states,

The provisions of this title detailing departmental administration of code compliance procedures are intended only for the purpose of providing guidance to Clallam County employees and are not to be construed as creating a basis for appeal or a defense of any kind to an alleged violation.

12

Thus chapter 20.08 CCC provides guidance to the County *without* creating a clear duty to investigate every complaint.

Moreover, nothing in chapter 20.08 CCC imposes a clear duty to take *both* of the two precise actions specified in Lange's application for the writ: investigation of Lange's code complaint *and* issuance of a "written final decision within 40 days." CP at 7. In light of all the legislative body has said in chapter 20.08 CCC, we hold that the County's ordinances do not impose on the Department's director a clear duty to act by investigating or rendering a final decision on each code complaint received. Therefore the superior court did not err by quashing its writ of mandamus and dismissing this case.

C.    *Attorney Fees*

Lange further assigns error to the superior court's dismissal of his "claim for attorney's fees."[10] Br. of Appellant at 2. Because the superior court properly dismissed Lange's application for the writ of mandamus, the superior court did not err by refusing to award him reasonable or statutory fees.

Lange further claims that he is entitled to an attorney fee award under RCW 90.58.230. This claim lacks merit.

RCW 90.58.230 creates a civil cause of action for violations of the Shoreline Management Act and authorizes a trial court, in its discretion, to award attorney fees and costs to the prevailing party. But Lange did not bring a cause of action under RCW 90.58.230. His

---

[10] Lange's application for a writ of mandamus also requested an award of (1) reasonable costs including reasonable attorney fees "pursuant to law and equity" or, in the alternative, (2) statutory costs and attorney fees. CP at 7.

No. 44476-3-II

petition stated allegations supporting *only* his application for the writ of mandamus, and it did not allege that the County violated the Shoreline Management Act. The superior court did not err by refusing to award attorney fees to Lange.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Hunt, P.J.

_____
Melnick, J.