FILED
COURT OF APPEALS
DIVISION II

2014 DEC 30 AM 9: 49

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LEWIS COUNTY and DIANA YU, MD, Lewis County Health Officer, | No. 45578-1-II |
| Appellants, | |
| v. | |
| GOLDEN UNICORN FAMILY TRUST, JACK A. NORTON, as trustee and as an individual, R. LEO BELL, as trustee and as an individual, and VICTOR BONAGOFSKI, as trust representative and as an individual, | UNPUBLISHED OPINION |
| Respondents. | |

JOHANSON, C.J. — Lewis County (County) appeals the trial court's decision that the County is not entitled to recoup personnel costs incurred in abating a nuisance on real property from the property's owners or occupiers. It argues that the trial court erred in ignoring a Lewis County Code (LCC) provision that specifically allows recovery for personnel costs incurred in the

abatement. We agree, vacate the judgment, and remand for entry of a new judgment to include the personnel costs.[1]

## FACTS

In 2004, the County filed a complaint against Golden Unicorn Family Trust, Victor Bonagofksi, Jack A. Norton, and R. Leo Bell (Respondents), alleging that they were storing solid waste and vehicles on the property located at the 4000 block of Harrison Avenue, Centralia, Lewis County (specifically, 4020 Harrison Avenue).[2] In February 2013, the County moved for summary judgment and requested a warrant of abatement based on violations of Title 8, chapters 5 and 45 of the LCC.[3]

The parties appeared on March 22, 2013, for argument. The trial court ruled in the County's favor, finding that Respondents violated the LCC by maintaining solid waste and hulk vehicles on their property. It declared the violations a nuisance and awarded the County a warrant of abatement. With respect to abatement costs, the trial court provided,

> Lewis County and the Lewis County Sheriff's Office or their respective designees are authorized to abate the nuisance on the property and to use any proceeds from said abatement, including but not limited to any revenue derived from the disposal of each vehicle, to pay for said abatement. Any costs in excess of the proceeds of

---

[1] A commissioner of this court initially considered this appeal as a motion on the merits under RAP 18.14 and then referred it to a panel of judges.

[2] The registered owner of the subject property was the Golden Unicorn Family Trust. Bonagofski was in possession of the property and was listed in the summons and trial court documents as a trust representative. Bell is a trustee for the trust and filed the Respondents' brief. Norton is listed as another trustee.

[3] LCC 8.05.070 makes it unlawful for an owner or occupant to "maintain hulk vehicles on real property." Reply Br. of Appellant at 3. LCC 8.45.040 makes an owner or occupant responsible for permitting solid waste storage on the property.

the abatement are to be borne by the Defendants and may, without limitation, constitute a lien against the property.

Clerk's Papers at 38.

The County abated the nuisance. It inventoried the property and provided a notice for each of the 194 vehicles stored on the property. In June 2013, it also hired a third party contractor to perform the physical labor to remove the waste and vehicles. County personnel wages and benefits for the time spent on the inventory, preparing the notices, and managing the contractor totaled $11,827.05. The County also paid the sheriff's office $4,703.82 to provide security. The contractor, who was allowed to keep the profits from recycling the vehicles, ultimately paid the County $5,775.00.

The County requested reimbursement from Respondents in the amount of $16,530.87, less the $5,775.00 it received from the contractor, for a total of $10,755.87. The trial court, after hearing argument, denied the County's motion as to the $11,827.05 in personnel costs, reasoning that it would not permit the County to recoup code enforcement expenses "for time that they were just working as salaried employees." Report of Proceedings (Oct. 11, 2013) at 6. The order entered by the trial court included only a judgment for the value of the check from the contractor, which was to be applied to offset the sheriff's costs and with any additional amount applied to any other judgment held by the County against the Respondents. The County appeals.

## ANALYSIS

The County argues that the trial court ignored LCC 1.22.030(3), which provides,

(3) Recovery of Costs and Expenses
  (a) The costs of correcting a nuisance under this chapter, or under any chapter of the county code, which is the subject of a warrant of abatement or of a contempt order for violation of a permanent injunction against such nuisance shall be billed to the person responsible for the nuisance and/or the

3

owner, lessor, tenant, or any other person entitled to control the subject property.

(b) *The costs of correction shall include "incidental expenses," which may include, but are not limited to, personnel costs, both direct and indirect* and including attorney's fees; costs incurred in documenting the violation; towing/hauling, storage, and removal/disposal expenses; cost associated with service and enforcement of warrants, actual expenses and costs of the county in preparing notices, specifications, and contracts associated with the abatement and in accomplishing and/or contracting and inspecting the work; the costs of any required printing and mailing, and interest at the rate of 10 percent per annum on the costs of abatement incurred by the county.

(c) Costs of correction shall become due and payable to the county treasurer within 15 calendar days of the date of mailing the billing for abatement.

(d) All costs of correction assessed by the county create a joint and several personal obligation in all persons subject to a warrant of abatement or of a contempt order for violation of a permanent injunction against such nuisance.

(e) All such costs and expenses shall constitute a lien against the affected property, as set forth in subsection (5) of this section.

(Emphasis added.) Respondents answer that the trial court lacked jurisdiction, the trial court erred by allowing a "collateral attack" on the trust, and the trial court erred by allowing Bonagofski to be the trust representative and by "exceeding [its] authority over trustee's [sic] in their personal capacity." Br. of Resp'ts at 1.

The County moved to strike the Respondents' brief or to disregard new issues raised in the brief. A commissioner of this court denied the motion to strike and granted the motion to disregard any new issues "because Respondent[s] did not file a notice of cross-appeal." *See* Spindle. Accordingly, the sole issue on appeal is the issue raised by the County: whether the trial court erred in denying the County's request for personnel costs related to abating the nuisance in light of the costs allowed in LCC 1.22.030(3). *Singletary v. Manor Healthcare Corp.*, 166 Wn. App. 774, 787, 271 P.3d 356 (holding that absent a cross appeal, this court would not consider Respondent's argument for affirmative relief), *review denied*, 175 Wn.2d 1008 (2012).

4

Statutory interpretation is a question of law that we review de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The rules of statutory interpretation apply equally to ordinances. *World Wide Video, Inc. v. City of Tukwila*, 117 Wn.2d 382, 392, 816 P.2d 18 (1991), *cert. denied*, 503 U.S. 986 (1992). Thus, when construing an ordinance, our fundamental objective is to carry out the legislative body's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). When an ordinance has a plain meaning, we give the plain meaning effect. *Campbell & Gwinn*, 146 Wn.2d at 9. To determine the plain meaning of an ordinance, we look to all that is written in the ordinance and in related ordinances that discloses the legislative intent of the provision in question. *Campbell & Gwinn*, 146 Wn.2d at 11. Presumptively, use of the word "shall" denotes an imperative and creates a mandatory duty. *Clark County Sheriff v. Dep't of Soc. & Health Servs.*, 95 Wn.2d 445, 448, 626 P.2d 6 (1981).

LCC 1.22.030(3)(b) clearly sets out that recoverable costs "shall include 'incidental expenses.'" Incidental expenses, in turn, "may include . . . personnel costs, both direct and indirect," such as "costs incurred in documenting the violation; . . . removal/disposal expenses; . . . actual expenses and costs of the county in preparing notices, specifications, and contracts associated with the abatement and in accomplishing and/or contracting and inspecting the work; [and] the costs of any required printing and mailing." LCC 1.22.030(3)(b). The County's personnel costs include costs for inventorying the vehicles, preparing and mailing notices, and supervising the contractor. Consequently, because these costs are recoverable under the statute, the trial court erred in excluding the County's request for personnel costs related to the abatement of the nuisance. Accordingly, we vacate the cost judgment entered by the trial court and remand

No. 45578-1-II

for entry of a new judgment to include the formerly-excluded personnel costs in the amount of $11,827.05.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

BJORGEN, J.

SUTTON, J.