## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ROGER LEISHMAN, | No. 57122-6-II |
| Appellant, | |
| v. | |
| KATHRYN NADINE REYNOLDS, Executive Director of the Washington State Executive Ethics Board, | UNPUBLISHED OPINION |
| Respondent. | |

RUMBAUGH, J.P.T.*— This case addresses a petition for a writ of mandamus. The use of writs such as mandamus, habeus corpus, quo warranto, and prohibition has significantly declined since the 1960s. Today, courts strictly construe the elements of those writs, and the writs will issue in only rare and extraordinary circumstances. *Colvin v. Inslee*, 195 Wn.2d 879, 890-93, 467 P.3d 953 (2020).

Roger Leishman worked for the Attorney General's Office (AGO). The AGO terminated Leishman after a personnel investigation into complaints made both by and against Leishman. Leishman then filed bar grievances against the AGO employees who coordinated the investigation. The AGO provided counsel for the employees in the bar grievance proceedings.[1]

---

* Judge Stanley J. Rumbaugh is serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

[1] Assistant Attorney General Suzanne LiaBraaten represented the AGO employees. LiaBraaten has provided legal advice on human resources issues to the Court of Appeals. Thus, every Division Two judge is recused from this case.

Leishman then filed complaints with the Executive Ethics Board claiming that the AGO employees had violated the Ethics in Public Service Act (EPSA), chapter 42.52 RCW, when the AGO provided them counsel in the bar grievance proceedings. Kathryn Reynolds, the director of the Board, in the exercise of her discretion, refused to accept the complaints for filing.

Leishman then sued Reynolds, seeking a writ of mandamus to compel her to accept the complaints for filing. Reynolds moved to dismiss the lawsuit under CR 12(b)(6). The trial court granted her motion and dismissed the case.

Leishman appeals. He argues that a writ of mandamus was appropriate because Reynolds had a mandatory, ministerial duty to accept his complaints for filing and investigate them. In the alternative, he argues that her decision to reject the complaints for filing was arbitrary and capricious. Thus, he contends that the trial court erred by granting the motion to dismiss his petition for mandamus.

We affirm.

FACTS

I. INTERNAL COMPLAINTS AND PERSONNEL INVESTIGATION

The AGO hired Leishman in 2015 as a legal advisor for Western Washington University. Later that year, Leishman was diagnosed with posttraumatic stress disorder.

During the fall and winter of 2015, staff at the AGO had concerns about Leishman's conduct. Leishman found his coworkers' concerns indicative of a homophobic workplace environment. In February 2016, Leishman submitted an accommodation request, seeking to change supervisors. The AGO denied the request.

On March 1, 2016, after a meeting between Leishman and his supervisor, the supervisor complained about Leishman's conduct during the meeting. The next day, Leishman filed an

internal complaint asserting that he had experienced sexual orientation discrimination from other AGO employees, including his supervisor. The AGO then appointed an outside investigator firm, Ogden Murphy Wallace (OMW), to investigate the complaints. AGO employees Kari Hanson and Shane Esquibel coordinated the investigation. In late March, Leishman hired an attorney to represent him in the disability accommodation proceedings. That attorney did not represent Leishman in relation to the complaints that were the subject of the personnel investigation.

The OMW investigators interviewed Leishman twice, once in March 2016 and again in mid-April. OMW submitted its final report in late April. In early May, the AGO terminated Leishman. Later that year, Leishman and the AGO entered a negotiated settlement regarding his termination.

## II. OMW LAWSUIT AND BAR GRIEVANCES

In May 2017, Leishman sued OMW. In November 2017, the trial court dismissed the OMW lawsuit and Leishman appealed the dismissal.

In December 2018, Leishman filed bar grievances against Hanson and Esquibel. He alleged that Hanson and Esquibel had violated several provisions of the Rules of Professional Conduct (RPCs) by directing OMW to interview Leishman about areas where he was represented by counsel. In his grievance, Leishman asserted that "at the AGO's direction, the investigator insisted on discussing numerous issues related to my representation . . . including communication problems with my employers, other conduct related to my disability, and [the] March 1, 2016 meeting." Clerk's Papers (CP) at 41. Thus, Leishman asserted that Hanson and Esquibel had violated RPC 4.2 regarding ex parte contacts with a represented person, and RPC 8.4(g) and (h) regarding discriminatory conduct.

In January 2019, an AGO attorney responded to the bar grievances on behalf of Esquibel and Hanson. In addition to defending against the grievances on the merits,[2] the attorney explained the procedural history of the OMW lawsuit, which was pending on appeal to Division One at that time. She stated that the parties to the OWM lawsuit had "informed counsel for the AGO that AGO employees," including Esquibel and Hanson, "would likely become witnesses" in that case if Division One did not affirm the dismissal. CP at 654. The bar association then deferred investigating Leishman's grievances because of the pending litigation.

In October 2019, Division One reversed the dismissal order in the OMW lawsuit. *Leishman v. Ogden Murphy Wallace, PLLC*, 10 Wn. App. 2d 826, 836, 451 P.3d 1101 (2019). In early 2021, the Supreme Court concluded that OMW was a "person" within the ambit of RCW 4.24.510, the anti-SLAPP[3] statute, reversed Division One, and remanded for proceedings at the trial court. *Leishman v. Ogden Murphy Wallace, PLLC*, 196 Wn.2d 898, 902, 479 P.3d 688 (2021) (lead opinion); *id*. at 912 (Gordon McCloud, J. concurring in part). It is not clear from our record whether the bar association has proceeded with the investigation of Leishman's grievances.

### III. ETHICS COMPLAINTS

In July 2019, while the OMW lawsuit was pending on appeal, Leishman sought to file ethics complaints with the Board against Hanson, Esquibel, and three other AGO employees who assisted with the representation regarding the bar grievances. Leishman's complaints all asserted that the AGO's representation of Esquibel and Hanson constituted the use of public resources for

---

[2] In part, the attorney explained, "[t]he reasonable accommodation process" that Leishman was represented by counsel for "was not part of the personnel investigation" and that "[s]ometime after the issuance of the [OMW] Report, Mr. Leishman asserted that his behavior at the March 1, 2016 meeting with [his supervisor] was related to an alleged disability." CP at 651, 653.

[3] Strategic Lawsuits Against Public Participation.

private benefit in violation of the EPSA. Specifically, Leishman reasoned that statutes requiring the AGO to defend state employees in "all actions and proceedings" arising from acts done in the employees' "official capacity," did not apply when the state employee was accused of violating the Rules of Professional Conduct. RCW 43.10.030(3); *see* RCW 43.10.040.

Reynolds refused to accept Leishman's complaints for filing because they did not contain enough information "to allege violations" of the EPSA. CP at 100. She explained that "how state employees carry out their actual job duties and responsibilities and any applicability of agency polices in regards to job duties and responsibilities are not covered" by the EPSA. *Id.*

When Leishman sought to appeal her decision, Reynolds stated that she had not dismissed the complaints, which was a decision Leishman could have appealed to the rest of the Board. *See* WAC 292-100-046. Instead, she had not accepted the complaints for filing because they had not met the preliminary requirements of WAC 292-100-030, the Board's rule governing procedures for filing complaints. WAC 292-100-030(3) provides that "[a] complaint which is incomplete, does not contain enough information to allege a violation of [the EPSA], or is not within the jurisdiction of the board, will not be accepted for filing." Reynolds explained, "To the extent that the agency determined agency resources were to be expended" in defending against the bar grievances, that "would not be within the jurisdiction of the Board." CP at 109. "Whether you disagree with the agency's interpretation of their authority to do so under RCW 43.10.040," which requires the attorney general to represent state officials in most administrative, legal, and quasi legal proceedings, "is likewise not an issue that would fall under the [EPSA]." *Id.*

In February 2020, after the Supreme Court accepted review of the OMW lawsuit, Leishman tried to file another set of ethics complaints that were substantively identical to his first set but included an additional complaint against a special assistant attorney general. Reynolds also refused

5

to accept this set of complaints for filing, stating, "It appears there is no new evidence included in these complaints," and "there is not enough to allege violations" of the EPSA. CP at 111. And the special assistant attorney general "as a contracted employee, would not be subject to the [EPSA]." *Id*. Reynolds elaborated that to investigate a violation of the EPSA, "there needs to be evidence regarding the use of state resources for a private benefit or gain." CP at 117. Although Leishman asserted that the AGO attorney represented Esquibel and Hanson in their individual capacities, not as state employees, "there are not documents to support this allegation." *Id*. Further, "in limited situations, [assistant attorney general] time may be expended to respond to bar complaints regarding actions taken in the course of official duties." *Id*.

In April 2020, Leishman sued the AGO and other parties, including Reynolds, for monetary damages in King County Superior Court. That case was removed to federal court and most, if not all, of his claims have since been dismissed. *Leishman v. Wash. Att'y Gen.'s Off.*, No. 2:20-CV-861, 2023 WL 7158434, at *6 (W.D. Wash. Oct. 31, 2023)(court order) (granting OMW's motion to dismiss the claims against it with prejudice); *Leishman v. Wash. Att'y Gen.'s Off.*, No. 2:20-CV-861, 2023 WL 7166183, at *14 (W.D. Wash. Oct. 31, 2023) (court order) (granting the AGO and other state defendants' motion to dismiss Leishman's claims against them but allowing Leishman to amend his complaint).

IV. MANDAMUS LITIGATION

In June 2020, Leishman filed another lawsuit against Reynolds in superior court, seeking a writ of mandamus ordering Reynolds to accept his ethics complaints for filing.[4] A writ of

---

[4] Leishman initially filed this lawsuit in King County, but on Reynolds' motion the case was transferred to Thurston County. Leishman later added claims against the Office of the Governor related to the Public Records Act, ch. 42.56 RCW. Our record does not contain a final judgment on those claims and those claims are not at issue in this appeal.

mandamus may be issued by a court "to compel the performance of an act which the law especially enjoins as a duty resulting from an office." RCW 7.16.160. The writ issues when "there is not a plain, speedy and adequate remedy in the ordinary course of law," upon application from a "beneficially interested" party. RCW 7.16.170. Leishman filed his mandamus claim in state court because the abstention doctrine allows federal courts "to decline to exercise jurisdiction" in "all cases in which the court has discretion to grant or deny relief." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 718, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996). Only state courts have jurisdiction to issue writs of mandamus against state officials in Washington and the authority to issue the writ is discretionary. RCW 7.16.160; *King County. v. Sorensen*, 200 Wn.2d 252, 258, 516 P.3d 388 (2022). Thus, under the abstention doctrine, Leishman could not have included a claim for a writ of mandamus with his other claims against Reynolds in federal court.

In his complaint, Leishman again asserted that the OMW interview covered topics within "the subject matter of" Leishman's representation by the disability attorney. CP at 254. Therefore, he contended that the AGO employees who coordinated the investigation violated ethical rules due to the investigators' actions. Because the bar grievances alleged that Esquibel and Hanson had committed ethical violations, Leishman reasoned that they were prohibited from receiving AGO representation in the bar grievance proceedings, and that such representation was a violation of the EPSA because it was a use of public resources for private gain. Thus, he argued that his ethics complaints to the Board met the threshold requirements to allege a violation of the EPSA and that Reynolds had a mandatory duty to accept the complaints for filing.

In November 2021, Reynolds moved to dismiss the mandamus petition, arguing that she had discretion to reject deficient complaints, so a writ of mandamus was inappropriate. She also argued that, in the event that she had a mandatory duty to accept all complaints alleging violations

of the EPSA, Leishman's complaints did not meet that bar because they fell outside the scope of the EPSA. She reasoned that the conduct at issue in Leishman's bar grievances was within the scope of AGO staff official duties, so the AGO had a statutory obligation to defend its employees, and such representation was therefore not a violation of the EPSA.

In an oral ruling, the trial court concluded that Reynolds was "not under any mandatory duty" to accept the complaints because the Board's decision to enforce or not enforce the EPSA was a discretionary act. 1 Verbatim Rep. of Proc. (VRP) at 23. Therefore, a writ of mandamus was not an appropriate remedy. The court noted that it was possible to argue that Reynolds "had a duty not to accept the complaint for filing" under the Board rule that certain complaints would not be accepted for filing. *Id*. at 24; *see* WAC 292-100-030(3). The trial court also found that, because Board rules provided that a "'complainant is not a party to an ethics case for any purpose,' . . . under these circumstances, Mr. Leishman ha[d] no standing to compel the agency to act." 1 VRP at 24 (quoting WAC 292-100-020(1)).[5] The trial court granted the motion to dismiss.

Leishman moved for reconsideration, which the trial court denied. Leishman then moved to enter final judgment on the mandamus petition. The trial court granted the motion and entered final judgment. Leishman appeals the order granting the motion to dismiss.

ANALYSIS

MANDAMUS

Leishman argues that the trial court erred by granting the motion to dismiss his mandamus petition. He asserts that Reynolds' "administrative review of ethics complaints for compliance" with the filing standards was a ministerial act with no discretionary component, not a prosecutorial

---

[5] This WAC has been updated since Leishman filed this lawsuit, but the relevant language has not changed, so we cite to the current version of the WAC.

decision that required the exercise of discretion. Reply Br. of Appellant at 16. He contends that Reynolds had mandatory duty "to accept ethics complaints that comply with the threshold procedural requirements" and failed to do so, meriting a writ of mandamus. Br. of Appellant at 27-28. We disagree.

A.      General Principles

"We review the superior court's dismissal of an action under CR 12(b)(6) de novo." *Bogen v. City of Bremerton*, 18 Wn. App. 2d 676, 679, 493 P.3d 774 (2021). When reviewing an order to dismiss under CR 12(b)(6), we presume that the factual allegations in the complaint are true. *Cutler v. Phillips Petrol. Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994). "Courts should dismiss a claim under CR 12(b)(6) only if it appears beyond a reasonable doubt that no facts exist that would justify recovery." *Id.* The trial court's "[u]nchallenged findings are verities for purposes of appeal." *W. Coast, Inc. v. Snohomish County*, 112 Wn. App. 200, 207, 48 P.3d 997 (2002).

Mandamus is "an extraordinary writ" that is appropriate in only limited circumstances. *Walker v. Munro*, 124 Wn.2d 402, 407, 879 P.2d 920 (1994). To secure the writ, an applicant must show that "the party subject to the writ is under a clear duty to act;" that "the applicant has no 'plain, speedy and adequate remedy in the ordinary course of law;'" and that "the applicant is 'beneficially interested'" in the action. *Eugster v. City of Spokane*, 118 Wn. App. 383, 402, 76 P.3d 741 (2003) (quoting RCW 7.16.170). Without all three elements, no writ will issue. *Id.* "[E]ven upon showing these requirements, a party is not entitled to a writ of mandamus . . . because our jurisdiction to issue such a writ is nonexclusive and discretionary." *King County*, 200 Wn.2d at 258.

The trial court's ruling in this case rested on the first and third elements: the duty to act and the existence of a beneficially interested applicant. "If the law does not require a government

official to take a specific action," then a writ of mandamus cannot compel the action. *Colvin*, 195 Wn.2d at 893. The writ is "not directed at a general course of conduct," but instead "contemplates the necessity of indicating the precise thing to be done." *Walker*, 124 Wn.2d at 407. "[E]ven a mandatory duty is not subject to mandamus unless it is also ministerial, or nondiscretionary, in nature." *SEIU Healthcare 775NW v. Gregoire*, 168 Wn.2d 593, 599, 229 P.3d 774 (2010). A duty is both mandatory and ministerial when "'the law prescribes and defines the duty to be performed with such precision and certainty *as to leave nothing* to the exercise of discretion or judgment.'" *Id.* (quoting *State ex rel. Clark v. City of Seattle,* 137 Wash. 455, 461, 242 P. 966 (1926)).

Further, to have standing to seek mandamus, a party must be "beneficially interested," which means they must have "an interest in the action beyond that shared in common with other citizens." *Retired Pub. Emps. Council v. Charles*, 148 Wn.2d 602, 616, 62 P.3d 470 (2003); *see Freedom Found. v. Bethel Sch. Dist.*, 14 Wn. App. 2d 75, 88, 469 P.3d 364 (2020) (holding that complainant foundation that was not a party to a Public Disclosure Commission complaint, and had not been injured, did not have standing to appeal dismissal of the complaint).

B.      Whether a Writ of Mandamus was Appropriate in This Case

        1.      Statutes and rules at issue in this case

The United States Supreme Court has recognized "that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831, 105 S. Ct. 1649, 84 L. Ed. 2d 714 (1985). "This recognition of the existence of discretion is attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement." *Id.* "Similar concerns animate the principles of administrative law that courts generally will defer to an agency's construction of the statute it is charged with implementing, and to the procedures it

adopts for implementing that statute." *Id*. at 832. For example, this court has held that a statute providing that county prosecuting attorneys "shall" prosecute "all criminal and civil actions" where the state or county may be a party did not support a writ of mandamus to "specifically compel the prosecutor to bring any civil suit." RCW 36.27.020; *Fisher v. Clem*, 25 Wn. App. 303, 307, 607 P.2d 326 (1980), *overruled on other grounds*, *Brouillet v. Cowles Pub. Co.*, 114 Wn.2d 788, 793, 791 P.2d 526 (1990). *See also In re Appointment of Special Deputy Prosecuting Att'y*, 193 Wn.2d 777, 786-87, 446 P.3d 160 (2019) (explaining that a writ of mandamus was not an available remedy because the county prosecutor was "not *required* to sue a county official . . . at the request of another county official"). These cases are distinct from circumstances where statutes unambiguously require action, with no possible question of exercising discretion. *Kanekoa v. Dep't of Soc. & Health Servs.*, 95 Wn.2d 445, 449-50, 626 P.2d 6 (1981) (affirming order granting a writ of mandamus to compel a corrections center to accept all convicted male felons within 40 days of conviction).

The Board is a state agency authorized to enforce the EPSA "and rules adopted under it." RCW 42.52.360(1).[6] The Board has prosecutorial authority: it "shall . . . [i]nvestigate, hear, and determine complaints by any person or on its own motion." RCW 42.52.360(3)(d). As part of this authority, the Board has adopted rules governing the procedure for filing complaints. WAC 292-100-005. "A complaint shall include . . . [a] statement of the nature of the alleged violation(s)" and all evidence available to demonstrate that a violation of the EPSA has occurred. WAC 292-100-030(2)(b)-(c). "A complaint which is incomplete, does not contain enough information to allege a

---

[6] The statute has been amended since Leishman filed this lawsuit, but the relevant language has not changed, so we cite to the current version of the statute.

violation of [the EPSA], or is not within the jurisdiction of the board, *will not* be accepted for filing." WAC 292-100-030(3) (emphasis added). Once a complaint has been accepted for filing, the Board must investigate the complaint. RCW 42.52.420(1). But even after filing, "[t]he complainant is not a party to an ethics case for any purpose." WAC 292-100-020(1).

The provision of the EPSA at issue in Leishman's complaints, RCW 42.52.160(1),[7] provides, "No state officer or state employee may employ or use any person, money, or property under the officer's or employee's official control or direction, or in his or her official custody, for the private benefit or gain of the officer, employee, or another." However, the statute "does not prohibit the use of public resources to benefit others as part of a state officer's or state employee's official duties." RCW 42.52.160(2). Correspondingly, the attorney general has a statutory obligation to "[d]efend all actions and proceedings against any state officer or employee acting in his or her official capacity." RCW 43.10.030(3). More specifically, the attorney general must "represent the state and all officials . . . in the courts, and before all administrative tribunals or bodies of any nature, in all legal or quasi legal matters, hearings, or proceedings . . . except those declared by law to be the duty of [a county's] prosecuting attorney." RCW 43.10.040.

2.    Whether Leishman satisfied the elements of mandamus

Here, Reynolds refused to accept Leishman's complaints for filing because the AGO is required to represent state employees in most administrative and legal proceedings arising from a state employee's official acts. Therefore, the AGO providing its employees representation "to respond to bar complaints regarding actions taken in the course of official duties" did not constitute the use of public resources for private gain. CP at 117. And the trial court concluded that Reynolds

---

[7] The statute has been amended since Leishman filed this lawsuit, but the relevant language has not changed, so we cite to the current version of the statute.

was "not under any mandatory duty" to accept Leishman's complaints. 1 VRP at 23. Instead, the trial court implied that Reynolds' only mandatory duty under WAC 292-100-030 seemed to be to *not* accept complaints that were incomplete or outside the Board's jurisdiction. And the trial court found that "Leishman ha[d] no standing to compel the agency to act" under the Board's rules. *Id*. at 24.

First, Leishman cannot show that Reynolds had a mandatory, ministerial duty that did not call for any exercise of discretion or judgment. *SEIU Healthcare 775NW*, 168 Wn.2d at 599. Agencies have significant discretion to decline to pursue enforcement actions and the exercise of that discretion cannot be compelled through a writ of mandamus. *Heckler*, 470 U.S. at 831; *Special Deputy Prosecuting Att'y*, 193 Wn.2d at 786-87; *Fisher*, 25 Wn. App. at 307. Here, the Board has prosecutorial authority to "[i]nvestigate, hear, and determine complaints by any person or on its own motion." RCW 42.52.360(3)(d). Although we generally construe "shall" to be mandatory, in context within RCW 42.52.360, "shall" is an adverb modifier for "[i]nvestigate, hear, and determine," which calls for the exercise of discretion within the mandatory duty of "determining" complaints. Pursuant to that authority, the Board's rules provide that it will not accept for filing any complaint that "does not contain enough information to allege a violation of [the EPSA]." WAC 292-100-030(3). Reviewing a complaint to determine whether it meets the criteria for filing is not a mandatory, ministerial act such as confirming that a prisoner has been convicted. *See Kanekoa*, 95 Wn.2d at 449. Determining whether a complaint alleges a violation of the EPSA calls for an exercise of judgment, the outcome of which cannot be compelled. This is the very essence of discretion. In other words, Reynolds satisfied her only mandatory duty under the statute by determining that the complaints did not meet the criteria for further action. Thus, we hold that the

trial court did not err by concluding that Reynolds' refusal to accept Leishman's complaints for filing was a discretionary act.

Further, Leishman fails to show that he has standing to seek a writ of mandamus. In his opening brief, Leishman asserts that "[o]nly the first element" of mandamus, the mandatory ministerial duty, "is at issue here." Br. of Appellant at 27 n.5. In his reply brief, he asserts for the first time that "[a]s the complainant whose ethics complaints were rejected, Leishman ha[d] standing to seek mandamus relief." Reply Br. of Appellant at 18. But the Board's rules establish that a complainant is not a party to an ethics case "for any purpose." WAC 292-100-020(1). And the trial court here found that Leishman lacked "standing to compel the agency to act." 1 VRP at 24. Leishman has not challenged that finding, so it is a verity on appeal. *W. Coast*, 112 Wn. App. at 207. Because Leishman did not have standing to seek a writ of mandamus, we need not address his contention that Reynolds' exercise of discretion was arbitrary and capricious.

In sum, "it appears beyond a reasonable doubt that no facts exist that would justify" issuing a writ of mandamus. *Cutler*, 124 Wn.2d at 755. The trial court did not err by granting Reynolds' CR 12(b)(6) motion to dismiss.

## CONCLUSION

We affirm.

No. 57122-6-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Rumbaugh, J.P.T.

We concur:

Burton, J.P.T.*

Amamilo, J.P.T.*

---

* Judge Alicia Burton is serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

* Judge Sharonda D. Amamilo is serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

15